ACE PRINTERY, INC. *v.* KRAMER–NOVACK CORPORATION

CIRCUIT COURT  FOURTEENTH CIRCUIT
FILE NO. CV 14-611-606

Memorandum filed March 14, 1961

*Joseph Neiman* and *Frederick D. Neusner,* both of Hartford, for the plaintiff.

*Francis B. Tracy,* of Bristol, for the defendant.

DıCᴇɴᴢᴏ, J. This is an action to recover for certain printing work and materials claimed to have been made by the plaintiff for the defendant and delivered to the defendant. The court permitted the plaintiff to amend his complaint. The amended complaint is in three counts. The first count alleges that the printing was done at the request of the defendant corporation. The second count alleges that the printing was done at the direction of agents and servants of the defendant and that the defendant ratified such acts. The third count alleges that the defendant appointed said agents in violation of law, that plaintiff was entitled to rely on the legality of the defendant's operation and that defendant is now estopped from denying its ownership and agency.

The defendant admits it has failed and refused to pay the plaintiff's bill for the printing, amounting to $930.58, despite demand. There is no dispute as to the amount involved. However, the defendant denies all of the other allegations in the amended complaint and claims it never had any dealing with plaintiff.

Evidence produced at the trial establishes the following facts. Defendant is a corporation that operates and conducts a restaurant known as Wright's Restaurant on Farmington Avenue (route 10, the college highway) in Plainville. It owns the fixtures in the restaurant business and also owns the land and buildings in which the restaurant is located. Wright's Restaurant has issued to it a restaurant liquor permit on which the defendant corporation is the backer. The permit was issued by the liquor control commission of Connecticut and the permittee was Irving Kramer. Nathan J. Noveck is secretary and treasurer of the defendant corporation and the majority stockholder. On February 5, 1960, while purporting to act for the defendant corporation, Nathan J. Noveck entered into a written agreement with one Recupeto in which it was set forth that the real estate containing the restaurant business would be leased to Recupeto, the personal property located in the restaurant would also be leased to Recupeto and the lessee, Recupeto, would have the option of purchasing the real estate and personal property for the agreed sum of $125,000. The lessee was to pay a monthly rental of $800 for the first three months and $1000 per month for the following nine months. The term of the proposed lease was one year. Other terms of the written agreement are not very clear but seem to provide that Recupeto would pay to Nathan J. Noveck for the defendant corporation the sum of $2500 on or before February 9, 1960, which amount the defend-

ant's treasurer acknowledged receiving and keeping for the defendant; an amount of $2500 on or before March 9, 1960; and an additional amount of $5000 within ninety days from the signing of the proposed lease agreement. The total of these three sums, $10,000, was to be held by the lessor only as security for the payment of rent and was to be applied toward the purchase price of $125,000, presumably if Recupeto exercised the option to purchase. The agreement further provided that all profits from rentals were to be credited to the lessor, the defendant corporation, and that the lessee could assign all rights acquired under the agreement to any corporation to be formed "to operate said business." The agreement also contained the following clause: "(c) All conditions and obligations are made contingent upon the Liquor Control Commission granting a liquor license to said lessee."

There was no evidence that any formal lease agreement was ever entered into, nor any evidence of a formal sales agreement of Wright's Restaurant. There was no evidence of the taking of any inventory of the liquor and food stock, referred to in the agreement, nor was there any evidence of the preparation of a list of articles of personal property, also referred to in the agreement.

On February 9, 1960, the defendant caused to be recorded in the office of the town clerk in the town of Plainville the following document.

"Town of Plainville
Plainville, Connecticut

Notice of Intention to Sell

Kramer-Noveck Corporation to Leonard J. Recupeto

Notice is hereby given, that Kramer-Noveck Corporation, a Connecticut corporation with its

principal office in the City of Bristol, Hartford County in said State, intends to sell the restaurant business including the stock in trade (but not including fixtures) located at No. 290 Farmington Avenue, Plainville, Connecticut to Leonard J. Recupeto, of Farmington, Connecticut.

The purchase price of said business is Five Thousand Dollars, plus the amount for inventory of liquor supplies on hand, to be determined by appraisal at cost price. Said sale to become final upon approval of an application for a liquor permit by the buyer.

Creditors are notified to send all bills against said business to Francis V. Tracy, Attorney at Law, 2 Riverside Avenue, Bristol, Connecticut.

This notice is filed to comply with the Bulk Sales Act of the State of Connecticut.

Dated at Bristol, Connecticut.
 February 8, 1960
 Kramer-Noveck Corporation
 by Francis V. Tracy
  Its Attorney"

There was no evidence that the $5000 mentioned in the notice of intention to sell was ever paid. The provisions of the notice of intention to sell dated February 8, 1960, were inconsistent with the provisions of the agreement dated February 5, 1960. There was no evidence of the usual precautions taken by scriveners in reciting a transaction of this nature and considering the sums of money alleged to have been involved. Under these circumstances, the defendant claims it put Recupeto and one Frank J. Valente in possession and control of Wright's Restaurant business, henceforth disclaiming any participation whatever by it in the conduct of Wright's Restaurant, although defendant's treas-

urer, Noveck, testified that he was on the premises and knew what was going on.

On the same day, February 8, 1960, the defendant corporation appointed the said Frank J. Valente manager and principal representative on the restaurant premises, vested full authority and control in Valente, and joined with Valente in applying to the liquor control commission for the appointment of Valente as substitute permittee for it for a period beginning February 8, 1960, and ending March 8, 1960. Valente was selected by Recupeto to act as substitute permittee for the defendant with the consent of the defendant, and Valente was also the choice of Recupeto's alleged designee, H. & L., Inc., in the purported application for a new permit, applied for pursuant to the original agreement of February 5, 1960. This application for a new liquor permit was withdrawn at a later date when the entire plan collapsed.

Wright's Restaurant is well known in the Farmington, Bristol, Newington and Hartford areas. On February 16, 1960, the plaintiff received an order from a Hartford advertising agency to do certain printing for Wright's Supper Club, a restaurant on route 10, the college highway, Plainville, Connecticut, with instructions to deliver this printing to Wright's Restaurant. The order was for 2000 table cards and 2000 notification cards. The table card was a folding print, designed to stand on a table, approximately three inches by six inches in area and containing the following printing on each side:

"Coming Attraction — Minimum $5.75 Per Person includes Food and Beverage. Particularly attractive rates for banquets of any type, groups of ten or more, any night. Includes food and legal beverage . . . . Make reservations.

"WRIGHT'S SUPPER CLUB ROUTE 10 – COLLEGE HIGHWAY PLAINVILLE FOR RESERVATIONS PHONE PLAINVILLE – SHERWOOD 7-0000"

This order was delivered to Wright's Restaurant at the indicated address. The next printing order to plaintiff came over the telephone, and copy was received by plaintiff for a large number of cards as follows:

"You are cordially invited to the INAUGURAL WEEK PRESENTATION OF

TONY BENNETT
and 17 piece orchestra
Feb. 22 thru Feb. 27
at the new
WRIGHT'S SUPPER CLUB

Route 10 — College Highway — Plainville
Complete New Management

The Ultimate in            Minimum $5.75
Fine Entertainment         Includes Food and Beverage
Food and Dancing           Shows: 9 and 11 P.M.

FOR RESERVATIONS PHONE PLAINVILLE SHERWOOD 7-0000"

Further orders were sent to plaintiff, all advertising Wright's Supper Club, including an elaborate gold and black menu card entitled "MENU — WRIGHT'S — Route 10 — College Highway — Plainville" and advertising food and drink. All of these cards and papers were printed by the plaintiff and delivered by the plaintiff to Wright's Restaurant between February 16, 1960, and March 16, 1960, and were used in the restaurant business with the knowledge of the defendant and particularly the defendant's officer and majority stockholder, Nathan J. Noveck. Plaintiff sent its bills for all of this

work to Wright's Supper Club at the Farmington Avenue address.

"Wright's Restaurant" was a trade name used by the defendant. "Wright's Restaurant" was the trade name used by the defendant in joining with Valente for the substitute permit. The location of the restaurant never changed. On March 31, 1960, Recupeto caused Valente's new liquor application to be withdrawn, and thereafter defendant continued to operate the restaurant, paying all liquor bills incurred by Recupeto and Valente between February 8, 1960, and March 31, 1960.

The defendant denies any contract existed between the parties from which liability might attach to it, and argues that plaintiff knew he was not dealing with the defendant because on one of the cards printed by plaintiff were the words, "Complete New Management." The defendant further asserts that agency was not established and refutes the plaintiff's argument that the elements to create an estoppel were present. The court does not agree with the claims of the defendant. When the defendant designated Valente as its substitute permittee and placed him together with Recupeto in control and management of the restaurant business, permitting the name "Wright's" to continue at the same location and for the same purpose, it created the clear image that the new managers were legally capable of acting for the owners and that they were clothed with authority to direct the conduct of the restaurant business.

The conclusion that the defendant remained the owner of the restaurant business is inescapable. There never was a transfer of title to Recupeto and/or his designee; even the lease agreement was never consummated. The most that can be said for the defendant's notice of intention to sell, if the

court were to conclude that all of the defendant's actions in this matter were in good faith, is that it gave notice of an impending transfer of ownership and nothing more. No one other than defendant could exercise any ownership or dominion over the restaurant business until a new backer or new owner was approved by the liquor control commission. Such approval was never had. The law in Connecticut is clear that "owners," as used in the Liquor Control Act, means all of those persons who have combined in them both the title to and right of possession of the business and that the owner shall be responsible for the conduct of the business. See *Aetna Life Ins. Co.* v. *Bergin,* 5 Conn. Sup. 234, 235. The plaintiff was entitled to rely on the legality of defendant's operation. If third parties could not rely on the regulations of the liquor control commission relating to the conditions under which it will allow permit premises to operate, much of the purpose of such regulations would be defeated. See Conn. Dept. Regs. § 204-2.

The defendant makes much of the fact that on one of the cards printed by the plaintiff and delivered to Wright's was the statement "Under New Management." The quoted phrase does not necessarily mean under new ownership and did not serve to apprise the plaintiff that it was dealing with someone other than the legally constituted owner of Wright's. Merriam-Webster New International Dictionary (2d Ed.) defines management as "[a]ct or art of managing; the manner of treating, directing, carrying on, or using, for a purpose; conduct; control." In no sense does management mean ownership. Everyone of these definitions is consistent with an agency express or apparent. Can the defendant now be permitted to say that these new managers were without authority, or without at least apparent authority? The court thinks not.

The theory of apparent authority in legal agency relationships is for the benefit of third persons—in this case, the plaintiff. "The aim of the courts in formulating and developing rules as to apparent authority has been to protect, under proper circumstances, a third person in his dealings with an agent who lacks express authority." *Keeler* v. *General Products, Inc.,* 137 Conn. 247, 251.

As was asked in *White Co.* v. *Citizens Bank & Trust Co.,* 110 Conn. 635, 644, "what does equity and good conscience require in the situation presented?" The defendant's treasurer was its majority stockholder. During the printing deliveries he was on the restaurant premises, he saw and became familiar with the printing material and the use to which it was put. He knew it was for the benefit of the restaurant business. His knowledge was also the knowledge of the defendant. The defendant created the image that the new managers were in rightful control and direction of the restaurant business and as a consequence had authority to act for the owners of the restaurant business. It also led third persons to believe that in every way it was a legally conducted restaurant business. The plaintiff, relying on what appeared to be obvious, did the printing and delivered it to defendant's premises, where the printing was used in defendant's restaurant business by defendant's agents; all of this the plaintiff would not have done if it could not rely on the public import of a legally constituted liquor permit restaurant. The court is satisfied that under the circumstances the elements of an estoppel are present. " 'There are two essential elements to an estoppel— the party must do or say something that is intended or calculated to induce another to believe in the existence of certain facts and to act upon that belief; and the other party, influenced thereby, must actually change his position or do some act to his injury

which he otherwise would not have done.' " *Tradesmens National Bank* v. *Minor*, 122 Conn. 419, 424.

Defendant is estopped from denying the agency. The sum of $930.58 is found to be due the plaintiff, with interest at 6 per cent from March 16, 1960, to date.

Judgment may enter for plaintiff in the sum of $986.41.