The **PEOPLE** of the State of Colorado, Plaintiff–Appellee,

v.

**Belvin M. HARPER, Defendant–Appellant.**

No. 02CA1059.

Colorado Court of Appeals, Div. V.

March 25, 2004.

Ken Salazar, Attorney General, Melissa D. Allen, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

David S. Kaplan, Colorado State Public Defender, Shann Jeffery, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Chief Judge DAVIDSON.

Defendant, Belvin M. Harper, appeals from the trial court order denying his Crim. P. 35(a) and (c) motion for postconviction relief. We affirm in part, reverse in part, and remand for further proceedings.

In 1998, defendant pleaded guilty to two counts of possession of a schedule II controlled substance, a class four felony. He was sentenced to stipulated six-year terms in the Department of Corrections (DOC) on

each count, to be served concurrently with each other and with a sentence in a Jefferson County case, plus three years of mandatory parole as required by statute. *See* § 18–1.3–401(1)(a)(V)(A), C.R.S.2003. Defendant was paroled in January 2001; however, his parole was revoked in December of that year and he was returned to DOC to serve the remainder of his mandatory parole term.

In 2002, defendant filed a pro se Crim. P. 35(a) and (c) motion for postconviction relief, in which he argued that his parole had been unlawfully revoked and that requiring him to serve a mandatory parole term violated his right to equal protection. The trial court denied the motion, concluding that it did not have jurisdiction to address defendant's parole revocation and rejecting his equal protection claim.

## I.

The supreme court has determined that a person convicted of a sex offense committed between July 1, 1996, and July 1, 2002, is subject to discretionary parole under § 17–2–201(5)(a.5), C.R.S.2003. *People v. Cooper,* 27 P.3d 348 (Colo.2001); *see also Martin v. People,* 27 P.3d 846 (Colo.2001)(discretionary parole for sex offenses committed prior to July 1, 1996). In contrast to discretionary parole, a system of mandatory parole governs parole for felony non-sex offenders, such as defendant. *See* § 18–1.3–401(1)(a)(V), C.R.S.2003.

As relevant here, the statutory sentencing scheme provides for mandatory parole for non-sex offenders, such as defendant, who commit a class 4 felony, but mandates discretionary parole for sex offenders committing a class 4 felony.

Defendant contends that this parole scheme violates the equal protection and due process guarantees of the United States and Colorado Constitutions. Specifically, he argues that § 18–1.3–401(1)(a)(V), is unconstitutional because the mandatory parole scheme imposes a more severe sanction on non-sex offenders than on sex offenders whose crimes are in the same felony classification and that there is no rational basis for the distinction. We disagree.

■ Statutes are presumed constitutional, and the party challenging a statute bears the burden of proving its invalidity beyond a reasonable doubt. *See People v. Black,* 915 P.2d 1257, 1261 (Colo.1996).

■ At the outset, we note that divisions of this court have rejected similar equal protection claims on the ground that non-sex offenders are not similarly situated with sex offenders. *See People v. Walker,* 75 P.3d 722, 723 (Colo.App.2002); *People v. Friesen,* 45 P.3d 784 (Colo.App.2001). However, even if so, irrational penal classifications may still violate a defendant's right to equal protection and due process. As relevant here, a statute may be constitutionally infirm if it imposes a harsher penalty on less serious conduct. *See People v. Goodale,* 78 P.3d 1103 (Colo.2003); *People v. Suazo,* 867 P.2d 161 (Colo.App. 1993).

■ To determine whether a penal statute violates equal protection, we look to see whether the challenged classification is supported by a rational basis. Similarly, to evaluate such a claim on substantive due process grounds, we look to see whether the statute bears some reasonable relationship to a legitimate government interest. *See People v. Young,* 859 P.2d 814 (Colo.1993). Thus, when assessing a sentencing scheme to ensure that the severity of a sentence is commensurate with the severity of an offense in light of the overall statutory framework, the analysis mandated under substantive due process "essentially duplicates" the analysis required under rational basis equal protection. This is because a rational basis for a particular sentence will necessarily be lacking if the sentence is based upon an arbitrary distinction with another sentence. *See Chapman v. United States,* 500 U.S. 453, 465, 111 S.Ct. 1919, 1927, 114 L.Ed.2d 524 (1991).

Sex offenses have been found to be particularly heinous, *see People v. Kibel,* 701 P.2d 37, 44 (Colo.1985); *People v. White,* 656 P.2d 690 (Colo.1983), and, thus, according to defendant, must be viewed as more serious than non-sex offenses in the same felony category. Consequently, defendant argues, it is arbitrary to provide discretionary parole for sex offenses but not for non-sex offenses.

In support, defendant relies on decisions such as *People v. Suazo, supra,* in which greater punishments for less serious crimes were held to be constitutionally infirm. We are unpersuaded.

■ Defendant's argument is premised on the assumption that a more serious offense necessarily must be punished more severely than a less serious offense and that mandatory parole differs from discretionary parole only in that mandatory parole is a more severe punishment. However, regardless of whether sex offenses are more serious than non-sex offenses, or whether mandatory parole is more severe than discretionary parole, *see generally People v. Black, supra* (discussing of relative severity of mandatory and discretionary parole), neither equal protection nor due process requires that a sentencing scheme meet this rigid standard. *People v. Goodale, supra,* 78 P.3d at 1107 ("[S]ymmetry of punishment ... is not required by our precedent."). Instead, classifications within an overall statutory framework only must be based on differences that are real in fact and reasonably related to the general purposes of the criminal legislation. *See People v. Stewart,* 55 P.3d 107 (Colo.2002).

Statutes punishing less serious conduct more severely often will lack the requisite rational basis. For example, in *People v. Suazo, supra,* the statutory scheme resulted in a more severe punishment for a third degree assault on the elderly than for second degree assault on the elderly committed in the heat of passion. Because this statute permitted a defendant who had acted less culpably and had caused less harm to be sentenced to a greater punishment, and there was no other rational basis for this distinction, this statute was constitutionally infirm. Similarly, in *People v. Montoya,* 196 Colo. 111, 582 P.2d 673 (1978), the statute provided a greater penalty for first degree assault than for manslaughter committed in the heat of passion. Again, in that case, the difference in treatment was arbitrary.

Here, however, real differences exist between the parole objectives for sex offenders and non-sex offenders, and these differences are related to the purposes underlying parole. *See People v. McKenzie,* 169 Colo. 521, 526, 458 P.2d 232, 234 (1969)("If any state of facts can reasonably be conceived that will justify the classification, the existence of these facts will be assumed by the courts in order to uphold the legislation.").

■ The purpose of parole—whether discretionary or mandatory—is to reintegrate offenders into society while still protecting public safety. *See People v. McCullough,* 6 P.3d 774 (Colo.2000); *see also* § 17–22.5–102.5, C.R.S.2003 (rehabilitation of convicted offenders and need for public safety among primary purposes of parole). Mandatory parole, which applies to non-sex offenders, provides for a required period of short-term supervision to ensure that the rehabilitative process has been successful in preventing recidivism. *See* § 18–1.3–401(1)(a)(V)(B), C.R.S.2003.

However, because sex offenders have a "frightening and high" risk of recidivism, *see McKune v. Lile,* 536 U.S. 24, 34, 122 S.Ct. 2017, 2025, 153 L.Ed.2d 47 (2002); *Smith v. Doe,* 538 U.S. 84, 103, 123 S.Ct. 1140, 1153, 155 L.Ed.2d 164 (2003), mandatory short-term supervision is inadequate to reintegrate these offenders into society. Accordingly, different means have been used by the General Assembly to facilitate their successful reintegration into society.

Along with a system of discretionary parole, which permits the parole board to assess the effectiveness of parole on a case-by-case basis and, thus, to require extended treatment and rehabilitation if necessary, *see People v. Black, supra,* 915 P.2d at 1267 (Lohr, J., concurring in part, dissenting in part); *People v. Kibel, supra,* 701 P.2d at 44 n. 10, the General Assembly has adopted several other measures governing the reintegration of sex offenders into society.

For example, any person convicted of a sex offense on or after July 1, 1991, or who is released from the custody of the DOC having served a sentence for an unlawful sexual offense, is required to register with his or her local law enforcement agency. Sections 16–22–103, 17–22.5–202(3)(b.5)(II), C.R.S. 2003; *Jamison v. People,* 988 P.2d 177, 179 (Colo.App.1999). The information contained in the sex offenders registry is available to

the public and posted on the internet to aid in the supervision process. *See* §§ 16–22–110, 16–22–111, C.R.S.2003; *People v. Stead,* 66 P.3d 117 (Colo.App.2002). Additionally, sex offenders also must submit to "chemical testing of a biological sample . . . to determine the genetic markers thereof." Section 17–22.5–202(3)(b.5)(II), C.R.S.2003.

Moreover, whereas the state board of parole may discharge a non-sex offender at any time during the parole period upon a determination that the offender has been sufficiently rehabilitated and reintegrated into society and can no longer benefit from parole supervision, *see* §§ 17–22.5–403(8), 18–1.3–401(1)(a)(V)(B), C.R.S.2003, the corresponding provisions applicable to sex offenders do not provide for the early discharge of parole upon "rehabilitation." *See* § 18–1.3–1006, C.R.S.2003.

■ Accordingly, we conclude that the discretionary parole scheme is part of an entirely different means of ensuring that public safety is not jeopardized while sex offenders are reintegrated into society. Because this determination is based on the high risk of sex offender recidivism, we conclude that a rational basis exists for subjecting sex offenders to discretionary parole instead of mandatory parole. Thus, the sentencing scheme is not arbitrary, and therefore, § 18–1.3–401(1)(a)(V) violates neither equal protection nor due process of law.

## II.

Defendant also argues that the trial court erred in rejecting, on jurisdictional grounds, his claim that his parole was unlawfully revoked. We agree and conclude that a remand is required.

■ We initially note that appropriate grounds for postconviction relief under Crim. P. 35(c) include allegations of unlawful revocation of parole. *See* Crim. P. 35(c)(2)(VII); *see also People v. Turman,* 659 P.2d 1368, 1370 (Colo.1983). Accordingly, the trial court erred in concluding that it was without jurisdiction to consider defendant's claim.

Despite this error, if the motion, the files, and the record clearly establish that the defendant is not entitled to relief, we may deny this motion without the need for remand. *See White v. Denver Dist. Court,* 766 P.2d 632, 635 (Colo.1988). Nevertheless, we conclude that a remand is required here.

■ To the extent defendant claims a violation of his right to be free from double jeopardy, the claim lacks merit as a matter of law. Parole revocation hearings are administrative proceedings and do not punish criminal defendants for violating criminal laws. *People v. Taylor,* 74 P.3d 396, 400 (Colo.App. 2002). Parole revocation "does not punish the defendant for his conduct, but merely reaffirms the original sentence and requires the defendant to serve it while in custody." *People v. Gallegos,* 914 P.2d 449, 451 (Colo. App.1995).

However, defendant also alleged in his motion that his successful completion of a drug treatment program satisfied the sanction imposed on his initial parole violations; therefore, the subsequent imposition of additional sanctions for the same violations was unlawful. He also argued that, after his initial parole was revoked and he was resentenced to intensive supervision probation (ISP), his subsequent revocation and reincarceration was the result of a biased parole officer who had "personal animosity" toward him. He alleged that the parole officer was required to be disqualified from his case and that the hearing board officer went beyond her statutory authority in failing to remove the parole officer.

■ Because these assertions involve matters of fact that cannot be resolved on the basis of the motions, the files, and the record and, instead, must be resolved by the trial court, we are unable to state as a matter of law that defendant's claims are without merit. Consequently, a remand is required so that the trial court may exercise its jurisdiction under Crim. P. 35(c)(2)(VII) to consider these claims.

The order is reversed as to defendant's claims of multiple sanctions for the same parole violations and parole officer bias, and the case is remanded for further proceedings on those claims in accordance with this opin-

ion.  In all other respects, the order is affirmed.

Judge VOGT and Judge DAILEY concur.