2015 COA 118

**WISDOM WORKS COUNSELING SERVICES, P.C.; Denis Leveille; Roger Mollenkamp, Plaintiffs–Appellees and Cross–Appellants,**

**v.**

**COLORADO DEPARTMENT OF CORRECTIONS; Rick Raemisch, in his official capacity as Executive Director; Steve Hager, Division of Adult Parole, Community Corrections and Youthful Offender Systems, in his official capacity as Interim Director; Approved Treatment Provider Review Board, by and through its members; Dr. Todd Helvig; Bennie Lombard; Jeff Geist; Maryse Osborn; Amberly Chalberg; Liesl Schumacher, Defendants–Appellants and Cross–Appellees.**

Court of Appeals No. 14CA0341

Colorado Court of Appeals, Div. IV.

Announced August 27, 2015

Finger & Newcomb, P.C., William S. Finger, Evergreen, Colorado, for Plaintiffs–Appellees and Cross–Appellants.

Cynthia H. Coffman, Attorney General, Kristin A. Lockwood, Assistant Attorney General, Denver, Colorado, for Defendants–Appellants and Cross–Appellees.

Opinion by JUDGE WEBB

¶ 1 Colorado's Open Meetings Law (OML), sections 24–6–401 to –402, C.R.S. 2014, prohibits public business from being conducted "in secret." But suppose a public body opposes a claim under the OML by asserting that its regulations or long-standing practices allow certain official action to be taken without a meeting? Does the OML require such a public body to meet, merely provide a remedy to invalidate formal action that the public body has taken without meeting, or neither? These are novel questions.

¶ 2 We conclude that while the OML does not require public bodies to meet, the remedy of voiding certain actions taken without meeting applies to a public body, even if its regulations or practices do not require a meeting. On this basis, we affirm the trial court's OML ruling in favor of plaintiffs, Wisdom Works Counseling Services, P.C., Denis Leveille, and Roger Mollenkamp (Wisdom Works), and against defendants, the Colorado Department of Corrections and its executive director, sub-entities of the Department of Corrections, including the Approved Treatment Provider Review Board, and various employees or members of those sub-entities (DOC). We also affirm the court's other holdings.

## I. Background

¶ 3 This appeal and cross-appeal include two consolidated lawsuits brought by Wisdom Works arising from its failed applications to the Approved Treatment Provider Review Board (the Board) for certification as an approved provider of sex offender treatment for DOC parolees. The Board denied both applications based on independent reviews by two of its members—but without a meeting among the members of the entire Board. Then Wisdom Works filed these lawsuits against the DOC, which created the Board and authorized it to certify and approve treatment providers.

¶ 4 In the trial court, Wisdom Works primarily asserted that the Board's failure to announce and hold a public meeting to review the applications violated both the OML and the Administrative Procedure Act (APA), sections 24–4–101 to –108, C.R.S.2014. Alternatively, it sought a writ of mandamus under C.R.C.P. 106 ordering the Board to hold a public meeting on the applications.

¶ 5 Following a bench trial, the court concluded that the Board had violated former DOC Regulation 250–23 (2011) by denying the applications without meeting. This regulation required that "[a]t a minimum, two members of the [Board] shall meet, as needed" to "[r]eview completed applications," "[a]pprove or deny treatment programs," and "[a]pprove or deny therapists." The court held the denials invalid under the OML and awarded Wisdom Works fees and costs.

¶ 6 But after concluding that section 17–1–111, C.R.S.2014, exempts the Board's actions from the APA, the trial court held that it lacked subject matter jurisdiction over the APA claim. And the court rejected Wisdom Works's C.R.C.P. 106 claim, concluding that to order mandamus was "beyond [its] purview . . . simply because" the Board should have implemented "a better procedure."

¶ 7 The DOC appeals the court's OML ruling on the basis that DOC Regulation 250–23 did not require the Board to meet on applications. On cross-appeal, Wisdom Works contends the trial court erred in holding that the APA did not apply to the Board's actions and in denying C.R.C.P. 106 relief.

¶ 8 We affirm the trial court's ruling that the Board's failure to meet on the applications renders the denials void under the OML. But unlike the trial court, we leave aside the question whether DOC Regulation 250–23 required a meeting. *See Thyssenkrupp Safway, Inc. v. Hyland Hills Parks & Recreation Dist.*, 271 P.3d 587, 589 (Colo. App.2011) (Appellate court "may affirm a trial court's ruling on any grounds that are supported by the record."). In light of this OML holding, the C.R.C.P. 106 claim is no longer ripe. We also affirm the trial court's ruling on the APA claim.

## II. The Board Violated the OML by Denying the Applications Without Holding a Meeting

¶ 9 Because we conclude that the denials are void under section 24–6–402(8) of the OML, we begin there and decline to address whether DOC Regulation 250–23 required that the Board meet to consider the applications.

### A. Preservation and Standard of Review

¶ 10 Both parties raised the OML issue based on the undisputed fact that the Board denied both of Wisdom Works's applications without meeting. The court applied the OML, thereby placing this issue before us.

¶ 11 "[I]nterpreting the OML presents a question of law that we review de novo." *Colo. Off–Highway Vehicle Coal. v. Colo. Bd. of Parks & Outdoor Recreation*, 2012 COA 146, ¶ 22, 292 P.3d 1132. Doing so involves a familiar paradigm.

¶ 12 "[W]e begin with the language of the statute, giving words their plain and ordinary meaning." *Bd. of Cnty. Comm'rs v. Costilla Cnty. Conservancy Dist.*, 88 P.3d 1188, 1193 (Colo.2004). If the language is unambiguous, "we look no further." *Id.* But "[i]f the language is ambiguous, we may look to legislative history, prior law, the consequences of a given construction, and the goal of the statutory scheme to ascertain the correct meaning of a statute." *Colo. Off–Highway Vehicle Coal.*, ¶ 22 (internal quotation marks omitted). And whether applying plain language or resolving ambiguity, "[w]e avoid interpretations that would lead to an absurd result." *Reno v. Marks*, 2015 CO 33, ¶ 20, 349 P.3d 248.

### B. Law

¶ 13 The OML was enacted to ensure that "the formation of public policy is public business and may not be conducted in secret." § 24–6–401. It is "intended to afford the public access to a broad range of meetings at which public business is considered." *Benson v. McCormick*, 195 Colo. 381, 383, 578 P.2d 651, 652 (1978).

¶ 14 The OML defines a "state public body" as "any board, committee, commission, or other advisory, policy-making, rule-making, decision-making, or formally constituted body of any state agency." § 24–6–402(1)(d). A "meeting" is "any kind of gathering, convened to discuss public business, in person, by telephone, electronically, or by other means of communication." § 24–6–402(1)(b). Subsections 24–6–402(2)(a)–(d) require state public bodies to comply with various meeting requirements, including "full and timely notice" of meetings to the public under section 24–6–402(2)(c). And section 24–6–402(8) invalidates any "formal action" taken contrary to the OML.

## C. Application

¶ 15 Wisdom Works argues that because the Board "took formal action to deny [its] applications without meeting and conducting a process conforming with the requirements of law," the denials are "clearly invalid." We agree.

### 1. Application of the OML

¶ 16 To begin, is the Board's considering and denying the applications action subject to the OML? The DOC agrees that the Board is a "state public body" under section 24–6–402(1)(d). Also, the DOC does not dispute that the denials constituted "formal action."[1] Thus, the Board's action is subject to the OML. But determining the validity of that action, taken without meeting, begins with using supreme court precedent to fill some interstices in the OML.

¶ 17 The OML does not identify what types of meetings conducted by public bodies are subject to its requirements. Still, our supreme court has held that it applies to meetings occurring for the purpose of policy making. See Costilla Cnty., 88 P.3d at 1194 ("[A] meeting must be part of the policy-making process to be subject to the requirements of the OML. A meeting is part of the policy-making process if it concerns a matter related to the policy-making function of the

local public body holding or attending the meeting."). Also, the OML does not define "policy making." But our supreme court has held that the requisite link between a mandatory meeting and policy making exists "when the meeting is convened to discuss or undertake one of the actions enumerated in the remedy provision of the OML such as a rule, regulation, ordinance, or formal action." Id.

¶ 18 While informative, these cases are not dispositive because they discuss whether various conduct constituted a meeting, albeit not a public one. But because no such conduct occurred here, the OML applies to the Board, and the denials were formal actions, we turn to whether Wisdom Works has a remedy under section 24–6–402(8) of the OML.

### 2. Remedy Under the OML

¶ 19 The DOC agrees that under the OML, the following three categories of meetings must be "open to the public":

- "All meetings of two or more members of any state public body at which any public business is discussed or at which any formal action may be taken . . . ." § 24–6–402(2)(a);
- "All meetings of a quorum or three or more members of any local public body, whichever is fewer, at which any public business is discussed or at which any formal action may be taken . . . ." § 24–6–402(2)(b); and
- "Any meetings at which the adoption of any proposed policy, position, resolution, rule, regulation, or formal action occurs or at which a majority or quorum of the body is in attendance, or expected to be in attendance . . . ." § 24–6–402(2)(c).

¶ 20 The DOC continues, "Although the Open Meetings Law identifies three categories of meetings that must be open to the public, no provisions of the Open Meetings Law dictate *when* two or more members of a Board must meet." (Emphasis added.) This far, we agree: the OML does not prescribe

---

1. And in any event, one division of this court has applied the OML on the basis that a public body's disapproval of an application was a formal action. *See Hyde v. Banking Bd.*, 38 Colo. App. 41, 44, 552 P.2d 32, 34 (1976) (invalidating state banking board's denial of application for charter to operate commercial state bank).

when, where, or how often any particular public body must meet. *See Van Alstyne v. Hous. Auth. of City of Pueblo*, 985 P.2d 97, 101 (Colo.App.1999) ("Indeed, there is no language in § 24-6-402(2)(c), nor elsewhere in the Open Meetings Law, which may be relied upon to support plaintiffs' contention that the Housing Authority must conduct its business in a specific manner."). Given the diversity in membership and functions among public bodies, a "one size fits all" meeting requirement would often be inefficient, and for some public bodies likely unworkable.

¶ 21 Next, based on this reading of the OML, the DOC invites us to reverse the OML ruling based solely on DOC Regulation 250-23, which it argues "did not require Board members to automatically meet to review applications." We decline.

¶ 22 The trial court interpreted this regulation as requiring that Board members meet to review applications. The DOC argues that because the phrase "as needed" does not plainly require a meeting, the trial court should have deferred to the Board's longstanding interpretation that a meeting must occur only if the two reviewing members fail to agree on an application. Be that as it may, we can assume, without deciding, that the Board was not required to meet by regulation or practice, and still conclude that Wisdom Works may invoke a remedy under OML section 24-6-402(8).

¶ 23 Of course, the DOC cannot ignore section 24-6-402(8). Instead, it asserts that this section "simply declares the invalidity of resolutions, rules, regulations, ordinances, or formal actions that are made or undertaken at certain meetings, *if those meetings are not open to the public*." (Emphasis added.) But this interpretation would lead one to ask whether a party adversely affected by formal action of a public body, taken without meeting, lacks any remedy under the OML.

¶ 24 For our part, we consider section 24-6-402(8)'s wording "within the context of the statute as a whole." *Dillabaugh v. Ellerton*, 259 P.3d 550, 552 (Colo.App.2011). We "choose a construction that advances the purpose of the particular legislative scheme," *Adams v. Farmers Ins. Grp.*, 983 P.2d 797, 801 (Colo.1999), "consistent with the spirit and intent of the General Assembly in enacting the legislation." *May Dep't. Stores Co. v. State ex rel. Woodard*, 863 P.2d 967, 972 (Colo.1993). And because open meeting laws "are remedial," *Bagby v. Sch. Dist. No. 1*, 186 Colo. 428, 434, 528 P.2d 1299, 1302 (1974), we apply the precept that "[a] remedial statute is to be liberally construed to accomplish its object." *In re R.C.*, 2013 COA 77, ¶ 8, 309 P.3d 954; *see also City of Brighton v. Rodriguez*, 2014 CO 7, ¶ 13, 318 P.3d 496; 3 Norman J. Singer & J.D. Shambie Singer, *Sutherland Statutory Construction* § 57:12, at 57 (7th ed. 2007) ("Remedial statutes are liberally construed in order to effect their purpose, and latitude is allowed with respect to deviations from the letter of their provisions without invalidating the intended result.").

¶ 25 Given all this, we conclude that the remedy invalidates formal action taken in two circumstances. To be sure, and as the DOC concedes, the OML voids any of the listed actions taken at a meeting that does not comply with the requirements of section 24-6-402(2). But a closer looks reveals that the OML also voids any of these actions taken without a meeting.

¶ 26 Section 24-6-402(8) consists of a single sentence, "No resolution, rule, regulation, ordinance, or formal action of a state or local public body shall be valid unless taken or made at a meeting that meets the requirements of subsection (2) of this section." The DOC's narrower interpretation focuses on "the requirements of subsection (2)." Such a myopic view would permit any public body to establish a uniform practice or adopt a regulation that allows one or more of the listed actions to be taken without meeting, and thereby end-run invalidation under the OML. This view is the antithesis of liberally construing a remedial statute.

¶ 27 Instead, consider: the OML's stated concern with "the formation of public policy ... conducted in secret," section 24-6-401; the single remedy in section 24-6-402(8); and the right to recover attorney fees for enforcing this remedy in section 24-6-402(9)(b). Giving voice to these provisions, we conclude that interpreting section 24-6-402(8) as allowing public bodies to so easily

conduct public business in secret, and yet leave those adversely affected without a remedy, "would be an absurd result." *See Alpenhof, LLC v. City of Ouray,* 2013 COA 9, ¶ 16, 297 P.3d 1052 (rejecting interpretation that "would leave the city powerless to protect the public health, safety, and welfare from a flooding hazard partially resulting from human activity" as an "absurd result").

¶ 28 In the end, while the OML does not dictate when, where, or how often any public body must meet, by any fair reading it must be interpreted to hold a public body that takes formal action without meeting at risk of the action being voided under section 24–6–402(8) and paying the adverse party's attorney fees under section 24–6–402(9)(b). Along these lines, because the Board denied the applications without meeting, we agree with the trial court—albeit for different reasons—that the denials must be set aside. On remand, the district court shall return the proceeding to the Board for further action consistent with this opinion.

## III. Section 17–1–111 Exempts the Board's Actions from APA Review

¶ 29 Because we conclude that section 17–1–111 exempts the denials from the APA, we affirm the portion of the trial court's order rejecting Wisdom Works's APA claim.

### A. Additional Background

¶ 30 Neither the Board nor the DOC took any action or afforded Wisdom Works any post-denial remedy under the APA.

¶ 31 In its opening answer brief, Wisdom Works urges us to "instruct the trial court to require [the DOC] to appoint an independent hearing officer to conduct the administrative level hearing mandated by the APA." Wisdom Works compares the denials to licensure proceedings under section 24–4–104(7), C.R.S.2014, and relies on the hearing right following denial of a license application provided in section 24–4–105, C.R.S.2014. This analogy raises a concern over what should have happened after the denials. But in its amended complaint, Wisdom Works alleged defects in the denials themselves, including action "taken without any notice of hearing,

or opportunity to contest the decision of the ATP Review Board" and failure to "provide[ a] factual basis for its decision."

¶ 32 Either way, our analysis begins—and based on our application of the statutory exemption ends—with interpretation of section 17–1–111.

### B. Preservation and Standard of Review

¶ 33 Both parties raised section 17–1–111 below and the court ruled on the issue, thereby preserving it for review.

¶ 34 Because the facts are undisputed, we start by reviewing section 17–1–111 de novo. *See Dunlap v. Dep't of Corr.,* 2013 COA 63, ¶ 9, 303 P.3d 572 (reviewing statutory construction of section 17–1–111 de novo). The standards discussed in Part II above apply equally to interpreting section 17–1–111.

### C. Law

¶ 35 The APA "sets forth rulemaking procedures, which include notice and a hearing." *Sanchez v. Am. Standard Ins. Co. of Wis.,* 89 P.3d 471, 474 (Colo.App.2003); *see also* § 24–4–103, C.R.S.2014 (rulemaking procedures); § 24–4–105 (hearings and determinations). And section 24–4–106, C.R.S. 2014 "controls judicial review of agency action, including rulemaking and adjudication." *Colo. Ground Water Comm'n v. Eagle Peak Farms, Ltd.,* 919 P.2d 212, 216 (Colo.1996).

¶ 36 But the DOC has "broad discretion" over "the management of prisons." *Reeves v. Colo. Dep't of Corr.,* 155 P.3d 648, 651 (Colo.App.2007). To protect this discretion, section 17–1–111 provides that "provisions of [the corrections title] relating to the placement, assignment, management, discipline, and classification of inmates shall not be subject to section 24–4–103, 24–4–105, or 24–4–106, C.R.S." *See Dunlap,* ¶ 11 ("[T]itle 17 includes broad and extensive provisions concerning the authority of the Executive Director (and wardens serving under the supervision and control of the Executive Director) to administer sentences imposed by the courts.").

¶ 37 With only this much for guidance, how do we reconcile the breadth of the APA with the scope of this exemption?

### D. Application

¶ 38 The trial court relied on the "very broad term" of "management" to conclude that section 17–1–111 exempts the Board's actions from APA review. Wisdom Works argues that because section 17–1–111 does not define "management," it is ambiguous. But legislative failure to define a statutory term does not necessarily make the statute ambiguous. *Stoesz v. State Farm Mut. Auto. Ins. Co.*, 2015 COA 86, ¶ 13, —— P.3d ——. This is especially true where, as discussed below, the undefined term has a commonly understood meaning. *Id.*[2]

¶ 39 Alternatively, Wisdom Works argues that because "the statutory language is clear and unambiguous as [relating] only to inmate claims relating to management," it does not apply to the Board's action. We have agreed that the language is unambiguous. But for the following reasons, we disagree with Wisdom Works's proposed interpretation.

¶ 40 The statute addresses "inmates." Wisdom Works does not dispute that the term "inmates" includes parolees. Nor could it do so. *See People v. Barber*, 74 P.3d 444, 445 (Colo.App.2003) (Both "inmates and parolees are in legal custody."); *see also In re Miranda*, 2012 CO 69, ¶ 12, 289 P.3d 957 ("Parole serves not as a discharge from imprisonment but, simply, as a conditional permit to go outside a correctional facility." (internal quotation marks omitted)); *People v. Lucero*, 772 P.2d 58, 60 (Colo.1989) ("A parolee is one who has been conditionally released from actual custody but is, in the contemplation of the law, still in 'legal custody' and constructively a prisoner of the state." (internal quotation marks omitted)). Thus, the reference to inmates includes the parolees whom Wisdom Works agrees it would treat, if the Board had approved either of its applications.

¶ 41 Still, lack of Colorado precedent could make one wonder whether the term "management" includes decisions about treatment programs and providers for paroled sex offenders such as the programs that Wisdom

Works offers. For three reasons, we conclude that it does.

¶ 42 First, courts in Colorado and elsewhere have recognized that "management" includes treatment. In *Trozzo v. People*, 51 Colo. 323, 117 P. 150 (1911), the court adopted the following definition of management:

Webster defines the word "management" to be the act or art of managing; the manner of treating, directing, carrying on or using for a purpose; conduct; administration; guidance control; as, the management of a farm, the management of state affairs. From this it will be seen that the word is one of comprehensive meaning.

*Id.* at 334, 117 P. at 154 (internal quotation marks omitted). Courts in other states have also quoted this definition with approval. *See Ace Printery, Inc. v. Kramer–Novack Corp.*, 22 Conn.Supp. 420, 174 A.2d 454, 458 (Conn.Cir.Ct.1961); *Roberts v. City of Madison*, 250 Wis. 317, 27 N.W.2d 233, 236 (1947).

¶ 43 Second, when parolees are required to participate in treatment programs, the treatment is a condition of parole. *See* § 17–2–102(8), C.R.S.2014 ("The division of adult parole shall establish and administer appropriate programs of education and treatment and other productive activities, which programs and activities are designed to assist in the rehabilitation of an offender."). Because Wisdom Works "specializ[es] in treatment of sex offenders," and thus provides services relevant to conditions of parole, it plays a role in the "management" of paroled sex offenders.

¶ 44 Third, in *Dunlap*, ¶¶ 12–15, the division applied the exemption, albeit on different facts and for different reasons. *See id.* at ¶ 1 (death row inmate brought APA challenge to DOC regulation establishing procedure for carrying out death penalty by lethal injection). The division rejected the challenge, concluding that the management of inmates "plainly encompass[es] determinations concerning the conditions under which

---

**2.** Because we reject Wisdom Works's ambiguity argument, we need not address its legislative history analysis. *See M.T. v. People*, 275 P.3d 661, 665 (Colo.App.2010) ("Our supreme court has examined legislative history where necessary to resolve statutory ambiguity, and only rarely otherwise." (citation omitted)), *aff'd*, 2012 CO 11, 269 P.3d 1219.

sentences served by DOC inmates are to be carried out." *Id.* at ¶ 13. Similarly, the Board's decisions regarding treatment programs and providers constitute "determinations" affecting the part of an inmate's sentence being served on parole.

¶ 45 Persisting with its argument for a more narrow interpretation, Wisdom Works asserts that actions taken under the regulation could fall within the exemption statute only if the legislature had intended to create a "blanket exemption" from the APA. This assertion suffers from three flaws.

¶ 46 First, Wisdom Works presents a false dilemma. To conclude that Board decisions about treatment providers fall within the exemption does not mean that *every* DOC decision is similarly exempt. Leaving for another day marking the outer limits of the exemption, the strong nexus between the purposes of parole conditions and treatment services makes the exemption applicable here.

¶ 47 For example, "[t]he purpose of parole—whether discretionary or mandatory—is to reintegrate [sex] offenders into society while still protecting public safety." *People v. Harper,* 111 P.3d 482, 485 (Colo.App.2004). Of course, treatment programs provide an integral part of such offenders' successful rehabilitation. *See* § 16–11.7–105, C.R.S. 2014 (requiring sex offenders to undergo treatment). And because treatment programs further the parole scheme's purpose, treatment providers differ from other vendors whose products and services have a much more limited impact—if any—on these core functions. Thus, Wisdom Works's reliance on *Powell v. Colorado Public Utilities Commission,* 956 P.2d 608, 614 (Colo.1998), involving an APA claim by a utility that provided only phone services to inmates, is unpersuasive.

¶ 48 Second, because the legislature included terms other than "discipline" in the statute, Wisdom Works's argument that the statute should be interpreted based on a primary legislative purpose of insulating prison disciplinary decisions is unpersuasive. As always, "[w]e construe a statute so as to give effect to every word, and we do not adopt a construction that renders any term superfluous."

*Spahmer v. Gullette,* 113 P.3d 158, 162 (Colo. 2005). But were we to conclude that the legislature intended only to insulate disciplinary decisions from the APA, the other statutory terms, including "management," would be rendered meaningless.

¶ 49 Third, "management" has a broader meaning, *Trozzo,* 51 Colo. at 334, 117 P. at 154, than the statute's other terms, such as "classification." *See, e.g., Vondra v. Colo. Dep't of Corr.,* 226 P.3d 1165, 1166 (Colo.App.2009) (involving inmate's classification as a sex offender); *Milligan v. Colo. Dep't of Corr.,* 751 P.2d 75, 76 (Colo.App. 1988) (involving inmate's "continued medium security classification"). Thus, "management" should not be read so narrowly as Wisdom Works urges.

¶ 50 In sum, following *Dunlap,* we conclude that "management" encompasses the Board's actions in approving or disapproving treatment providers such as Wisdom Works. As a result, we affirm the portion of the trial court's order holding that section 17–1–111 exempts the denials from APA review.

## IV. Wisdom Works's C.R.C.P. 106 Claim Is No Longer Ripe

¶ 51 In its mandamus claim under C.R.C.P. 106, Wisdom Works urged the trial court to compel the Board to meet and review the applications. But because we have voided the denials and are remanding the case to the district court for return to the Board, final agency action has not occurred. *See Chittenden v. Colo. Bd. of Soc. Work Exam'rs,* 2012 COA 150, ¶ 28, 292 P.3d 1138 ("[T]he Order did not mark the consummation of the agency's decision-making process."). Also, because the Board may choose to hold an OML-compliant hearing on the applications, Wisdom Works could receive the same relief that it seeks under C.R.C.P. 106. *See Metal Mgmt. W., Inc. v. State,* 251 P.3d 1164, 1174 (Colo.App.2010) (Courts "will not consider uncertain or contingent future matters because the injury is speculative and may never occur." (internal quotation marks omitted)).

¶ 52 Therefore, this claim is no longer ripe.

## V. Wisdom Works Is Entitled to Attorney Fees on Appeal

¶ 53 In addition to the attorney fees awarded by the trial court, Wisdom Works requests appellate attorney fees. Wisdom Works is entitled to an award of fees incurred in successfully defending on appeal the judgment enforcing the OML. *See Van Alstyne*, 985 P.2d at 99–100. On remand, Wisdom Works should be awarded its reasonable attorney fees allocable to the OML claim, in an amount to be determined by the trial court. *See* C.A.R. 39.5.

## VI. Conclusion

¶ 54 The trial court's order is affirmed, and the case is remanded with directions to determine attorney fees and return the case to the Board for further proceedings consistent with this opinion.

JUDGE GRAHAM and JUDGE TERRY concur.