2012 COA 146

**COLORADO OFF–HIGHWAY VEHICLE COALITION, a Colorado nonprofit corporation; Lyle Borders; Jennifer L. Dent; Western Slope ATV Association, a Colorado nonprofit corporation; Trails Preservation Alliance, a Colorado nonprofit corporation; Mile–Hi Jeep Club of Colorado, a Colorado not-for-profit corporation; Timberline Trailriders, Inc., a Colorado nonprofit corporation; Thunder Mountain Wheelers, a Colorado nonprofit corporation; Colorado Motorcycle Trail Riders Association, Inc., a Colorado nonprofit corporation; and San Juan Trail Riders, a Colorado nonprofit corporation, Plaintiffs–Appellants,**

v.

**COLORADO BOARD OF PARKS AND OUTDOOR RECREATION, n/k/a Colorado Parks and Wildlife Board, Defendant–Appellee.**

No. 11CA1988.

Colorado Court of Appeals, Div. V.

Aug. 30, 2012.

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S.2011.

Trout, Raley, Montaño, Witwer & Freeman, P.C., James S. Witwer, Denver, Colorado, for Plaintiffs–Appellants.

John W. Suthers, Attorney General, Timothy J. Monahan, First Assistant Attorney General, Elaine J. Wizzard, Assistant Attorney General, Denver, Colorado, for Defendant–Appellee.

Opinion by Judge STERNBERG.*

¶ 1 In this action alleging violations of the Open Meetings Law (OML), sections 24–6–401 to –402, C.R.S.2011, plaintiffs, the Colorado Off–Highway Vehicle Coalition (COH-VCo), several nonprofit corporations, and interested citizens, appeal the district court's summary judgment in favor of defendant, the Colorado Parks and Wildlife Board (the Board). Plaintiffs also appeal the court's order denying them costs and attorney fees. We affirm.

## I. Background

¶ 2 The following facts are undisputed and taken largely from the trial court's detailed order granting summary judgment in favor of the Board.

¶ 3 The Board is responsible for managing all state parks and outdoor recreation areas and for administering all state park and outdoor recreation programs. *See* § 33–10–106(1)(b), C.R.S.2011. One of the outdoor recreation programs that the Board administers is the off-highway vehicle (OHV) program. *See* §§ 33–14.5–101 to–113, C.R.S. 2011 (the OHV Act).

¶ 4 Under the OHV Act, annual registration and permit fees for the recreational use of OHVs are collected and placed in the OHV Recreation Fund. *See* § 33–14.5–106. All such funds are required to be used for specified OHV purposes. *Id.*

¶ 5 The OHV Act is silent regarding the specific procedures to be used in expending the funds. However, for several years, the Board has made a portion of the OHV funds available through a grant process, in which OHV constituent groups, government agencies, or other persons may apply for grant funds. To help distribute the funds, the Board created the OHV Subcommittee, which ranks grant applications based on se-

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S.2011.

lection criteria approved by the Board. However, the Board retains final decision-making authority to allocate grant funds.

¶ 6 In November 2009, the Board gave notice of and held a public meeting regarding possible changes to the OHV grant program and OHV Subcommittee. The Board held subsequent properly noticed public meetings on January 28, February 19, March 19, May 7, and July 16, 2010, at which the Board discussed possible changes to the OHV grant program and the OHV Subcommittee and received public comment on the proposed changes.

¶ 7 During the course of this hearing process in 2010, however, three violations of the OML occurred:

1. On March 19, following the properly noticed public meeting, the Board discussed proposed changes to the OHV grant program and the OHV Subcommittee via e-mail. The primary topic of discussion at this second meeting, from which the public was excluded, was "an alternative proposal" from a Board member that "called for a more aggressive reformation of the [Recreation Fund] grant program and [OHV] Subcommittee."

2. On April 28, the Board again held a meeting, from which the public was excluded, via telephone and e-mail, to again discuss changes to the OHV grant program and OHV Subcommittee. At least two Board members discussed these changes over the phone, and all Board members received at least one e-mail after the telephonic meeting.

3. On June 7, an "OHV Program Modifications Roundtable" meeting was convened by the state Division of Parks and Outdoor Recreation to discuss proposed changes to the OHV grant program and OHV Subcommittee. All Board members were notified of the meeting, two attended it, and one actively participated in the discussion with representatives of constituent groups. In fact, two members of COHVCo also attended the meeting,

but it was apparently otherwise closed to the public.

¶ 8 After the June 7 meeting, COHVCo sent the Board a letter, alleging that it had violated the OML by participating in the June 7 meeting. In another letter to the Board, COHVCo further alleged that the Board had also violated the OML by virtue of its second March 19 meeting and its April 28 meeting.

¶ 9 On July 16, the Board held its regularly scheduled public meeting. At this meeting, the attorney general briefed the Board on the legal implications of the alleged OML violations. Following this briefing, the Board then heard comments from several "key players" on the proposed changes, including a COHVCo representative, and received public comment from twenty different attendees. The Board publicly discussed the proposed changes and ultimately voted unanimously to approve them.

## II. Procedural History

¶ 10 On August 13, 2010, plaintiffs filed suit alleging that the amendments adopted by the Board were beyond the scope of its statutory authority and that because of the OML violations that occurred on March 19, April 28, and June 7, the amendments were invalid. In its answer, the Board admitted the three OML violations.

¶ 11 Plaintiffs then filed a motion for summary judgment. In their motion, plaintiffs argued that the Board had violated the OML on March 19, April 28, and June 7 and requested an order "enjoining or invalidating the Board's approval of the [changes to the OHV grant program and OHV Subcommittee]." Plaintiffs also requested an award of costs and attorney fees under the OML.

¶ 12 In response, the Board again admitted that it violated the OML on the three occasions. However, the Board argued that the OML violations "were all effectively remedied" by the July 16 public meeting. The Board also argued that plaintiffs were not entitled to costs and attorney fees under the OML because their "pending action was not at all required to make the . . . Board comply with the state OML."

¶ 13 In reply, plaintiffs argued that no "right to cure" OML violations has been recognized in Colorado and that, in any event, the Board did not "cure" the prior OML violations because its July 16 meeting "merely displayed the orchestrated, unanimous 'rubber stamping' of the decisions reached during prior meetings that violated the OML." Plaintiffs also argued that they were entitled to costs and attorney fees because the Board admitted to violating the OML on three occasions.

¶ 14 The court then held a hearing and heard extensive argument from the parties.

¶ 15 In a detailed, well-researched, and well-reasoned written order, the district court granted summary judgment in favor of the Board. Initially, and consistent with the Board's admissions in its answer, the court found that the Board violated the OML on March 19, April 28, and June 7, 2010.

¶ 16 The court then turned to whether the Board could "cure" a violation of the OML, framing the legal issue as follows: "The issue of whether a state agency can 'cure' a violation of the OML by holding a properly noticed public meeting and openly and fully addressing the matters which formed the basis of the prior OML violations is an issue for which there is no clear precedent in Colorado."

¶ 17 Then, after reviewing Colorado case law construing the OML, as well as pertinent out-of-state authority, the court held, as a matter of law, that the Board could "cure" prior violations of the OML and in the July 16 meeting did in fact "cure" the three prior OML violations:

> Accordingly, the Court finds that, as a matter of law, the … Board was within its lawful authority to remedy the admitted OML violations here and, in effect, "cure" the prior OML violations by holding a fully noticed public meeting on July 16, 2010. The record is uncontroverted that the July 16, 2010, meeting was widely attended by parties either supporting or opposing the proposed changes to the OHV grant program and that those parties were provided an opportunity to be fully heard. Further, the … Board heard additional public comment and engaged in renewed delibera-

tions before announcing their subsequent decision to ratify the [changes to the OHV grant program and OHV Subcommittee]. Therefore, the Court finds that the actions of the … Board on July 16, 2010, did not merely constitute a 'rubber stamping' of a prior decision. …

¶ 18 The court also denied plaintiffs' request for costs and attorney fees, finding that they were not the "prevailing party" because the "Board cured any violation of the OML before the initiation of this lawsuit."

¶ 19 On appeal, plaintiffs assert that the trial court erred in its determination that the OML violations had been cured, and they seek an award of costs and attorney fees pursuant to section 24–6–402(9), for bringing the suit that alleged the three OML violations and for prosecuting this appeal.

### III. Open Meetings Law

¶ 20 Plaintiffs contend that the district court erred by determining that the Board "cured" the three OML violations. We disagree.

¶ 21 We review a grant of summary judgment de novo. *Rocky Mountain Festivals, Inc. v. Parsons Corp.*, 242 P.3d 1067, 1074 (Colo.2010). We will uphold a grant of summary judgment only if the pleadings and supporting documents demonstrate that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Id.* (citing C.R.C.P. 56(c)).

¶ 22 Likewise, interpreting the OML presents a question of law that we review de novo. *Bd. of Cnty. Comm'rs v. Costilla Cnty. Conservancy Dist.*, 88 P.3d 1188, 1192 (Colo.2004). In interpreting the OML, our primary task is to give effect to the intent of the General Assembly. *Id.* at 1193. To do so, we give words their plain and ordinary meaning. *Id.* If the language is ambiguous, we may look to "legislative history, prior law, the consequences of a given construction, and the goal of the statutory scheme to ascertain the correct meaning of a statute." *Id.* (quoting *People v. Luther,* 58 P.3d 1013, 1015 (Colo.2002)).

¶ 23 The OML is intended to "afford the public access to a broad range of meetings at which public business is considered." *Id.* (quoting *Benson v. McCormick*, 195 Colo. 381, 383, 578 P.2d 651, 652 (1978)). In light of this purpose, we interpret the OML broadly to further the General Assembly's intent to give citizens a greater opportunity to meaningfully participate in the decision-making process by becoming fully informed on issues of public importance. *Id.*

¶ 24 The OML provides, in pertinent part: "All meetings of two or more members of any state public body at which any public business is discussed or at which any formal action may be taken are declared to be public meetings open to the public at all times." § 24–6–402(2)(a). "No resolution, rule, regulation, ordinance, or formal action of a state or local public body shall be valid unless taken or made at a meeting that meets the requirements of subsection (2) of this section." § 24–6–402(8).

¶ 25 The OML does not explicitly address whether a state or local public body may "cure" a prior violation of the OML by holding a subsequent meeting that complies with the act. However, existing Colorado case law interpreting the OML implies that a state or local public body may do so, provided the subsequent meeting is not a mere "rubber stamping" of an earlier decision.

¶ 26 In *Van Alstyne v. Housing Authority*, 985 P.2d 97 (Colo.App.1999), the Pueblo Housing Authority (PHA) held several meetings to discuss the sale of certain real property. *Id.* at 98. As a result of these meetings, the PHA adopted a resolution to accept an offer on the property. *Id.* However, the PHA had failed to provide notice to the public regarding the time and place of these meetings. *Id.* Consequently, a group of neighbors filed suit against the PHA alleging violations of the OML. *Id.* "As a result of plaintiffs' complaint," the PHA held a properly noticed public meeting to reconsider the sale of the property. *Id.* at 98–99. At that meeting, the PHA considered only the three offers it had previously considered before readopting the resolution it had previously accepted. *Id.* at 99. Following this meeting, the PHA moved for summary judgment on

the ground that the plaintiffs' claim was moot. *Id.* The district court granted PHA's summary judgment motion. *Id.* On appeal, a division of this court reversed the summary judgment, finding that there remained a disputed question of fact regarding whether the PHA had reconsidered its earlier action at the subsequent public meeting or merely rubber stamped its earlier decision. *Id.* at 101–02.

¶ 27 In reaching this conclusion, the division in *Van Alstyne* relied on *Bagby v. School District No. 1*, 186 Colo. 428, 528 P.2d 1299 (1974), in which the supreme court considered whether a school board violated the OML by discussing pending business in private in advance of public school board meetings and then adopting, at the public meetings, the decisions it had already privately made. *Id.* at 434, 528 P.2d at 1302. The supreme court reasoned that when the majority of the public body's work is done outside the public eye, the public is "deprived of the discussions, the motivations, the policy arguments and other considerations which led to the discretion exercised by the Board." *Id.* Accordingly, the court stated that the OML's "prohibition against making final policy decisions or taking formal action in other than a public meeting is not meant to permit 'rubber stamping' previously decided issues." *Id.*

¶ 28 *Van Alstyne* and *Bagby* imply that a state or local public body may "cure" a prior violation of the OML by holding a subsequent complying meeting, provided the subsequent meeting is not a mere "rubber stamping" of an earlier decision made in violation of the OML. That is, if, under *Van Alstyne* and *Bagby*, a state or local public body could violate the OML by merely "rubber stamping" an earlier decision made in violation of the OML, then it follows that a state or local public body would *not* violate the OML by holding a subsequent complying meeting that is not a mere "rubber stamping" of an earlier decision. *See Bagby*, 186 Colo. at 434, 528 P.2d at 1302; *Barbour v. Hanover Sch. Dist. No. 28*, 148 P.3d 268, 273 (Colo.App.2006) ("[N]othing in the ... Open Meetings Law reflects a legislative intent to authorize the subsequent 'rubber stamping'

of previous defective decisions."), *aff'd in part and rev'd in part on other grounds,* 171 P.3d 223 (Colo.2007); *Van Alstyne,* 985 P.2d at 101–02.

¶ 29 Accordingly, existing Colorado case law supports an interpretation of the OML that permits a state or local public body to "cure" a prior OML violation by holding a subsequent complying meeting that is not a mere "rubber stamping" of an earlier decision. *See Hyde v. Banking Bd.,* 38 Colo.App. 41, 44, 552 P.2d 32, 34 (1976) ("Since full and timely notice was not given, the order of the Board ... is invalid, and the cause must be remanded for reconsideration of the application, voting, and issuance of a new order after compliance with [the OML].").

¶ 30 Out-of-state cases in which similar open meetings laws have been interpreted support the conclusion we reach here. In *Gronberg v. Teton County Housing Authority,* 247 P.3d 35 (Wyo.2011), the Wyoming Supreme Court considered whether a public agency could "cure" a violation of the Wyoming Public Meetings Act. *Id.* at 39. Relying on out-of-state cases, the court held that a public agency could "cure" a "void" action made in violation of the Public Meetings Act "by conducting a new and substantial reconsideration of the action in a manner which complies with the Act." *Id.* at 42. The court reasoned that the purpose of the act was not to "permanently condemn a decision or vote in violation of the Act," but to require "open decision making." *Id.; see also Tolar v. Sch. Bd.,* 398 So.2d 427, 429 (Fla.1981) (holding that subsequent action that was "not merely a ceremonial acceptance of secret actions" or a "perfunctory ratification of secret decisions" cured a prior violation of the open meetings law); *Allen v. Bd. of Selectmen,* 58 Mass.App.Ct. 715, 792 N.E.2d 1000, 1004 (2003) (concluding that a subsequent "properly noticed and properly conducted" public hearing "cured" prior violation of the open meetings law); *Picone v. Bangor Area Sch. Dist.,* 936 A.2d 556, 563 (Pa.Commw.Ct.2007) (stating that official action taken at a later, open meeting cures a prior violation of the open meetings law); *Valley Realty & Dev., Inc. v. Town of Hartford,* 165 Vt. 463, 685 A.2d 292, 294–95 (1996) (determining that a decision "ratified in public session in compliance with the open meeting law" cured a prior violation). We find these cases persuasive and applicable here.

¶ 31 Finally, the purpose of the OML supports our interpretation that a state or local public body may "cure" a prior OML violation. The OML's declaration of policy states: "It is declared to be a matter of statewide concern and the policy of this state that the formation of public policy is public business and may not be conducted in secret." § 24–6–401. Thus, the purpose of the OML is to require open decision-making, not to permanently condemn a decision made in violation of the statute. Because the focus of the OML is on the *process* of governmental decision making, not on the *substance* of the decisions themselves, it follows that the OML would permit ratification of a prior invalid action, provided the ratification complied with the OML and was not a mere "rubber stamping" of an earlier decision made in violation of the act. *See Cole v. State,* 673 P.2d 345, 349 (Colo.1983) ("The intent of the Open Meetings Law is that citizens be given the opportunity *to obtain information about and to participate in the legislative decision-making process....* A citizen does not intelligently participate in the legislative decision-making process merely by witnessing the final tallying of an already predetermined vote.") (emphasis added); *see also Alaska Cmty. Colls.' Fed'n of Teachers, Local No. 2404 v. Univ. of Alaska,* 677 P.2d 886, 891 (Alaska 1984) ("There is no inherent damage stemming from the substantive action which is taken; it is the manner of action which offends."); *Gronberg,* 247 P.3d at 41.

¶ 32 We are also influenced by the effect and consequences of plaintiffs' position. "Mechanistic vacation of decisions made in noncomformity with the [open meetings] law may do more disservice to the public good than the violation itself." *Alaska Cmty. Colls.' Fed'n of Teachers, Local No. 2404,* 677 P.2d at 891. That is, without an effective way of curing an OML violation, necessary public action may become gridlocked. *See Valley Realty & Dev., Inc.,* 685 A.2d at 295.

¶ 33 Accordingly, we agree with the district court that a state or local public body

may "cure" a violation of the OML by holding a subsequent complying meeting, provided the subsequent meeting is not a mere "rubber stamping" of an earlier decision made in violation of the OML.

 ¶ 34 Relatedly, plaintiffs contend that the district court erred by determining that the July 16 meeting was not a "rubber stamping" of an earlier decision. We reject plaintiffs' contention because the record, which includes the minutes of the July 16 meeting, amply supports the trial court's finding that the meeting "did not merely constitute a 'rubber stamping' of a prior decision." At the meeting, the Board heard additional comment from several "key players," including a COHVCo representative, heard public comment from many interested parties, and engaged in renewed deliberations before announcing its ultimate decision.

¶ 35 Accordingly, we affirm the district court's summary judgment in favor of the Board.

### IV. Costs and Attorney Fees

 ¶ 36 Lastly, plaintiffs contend that the district court erred by denying their request for costs and attorney fees. Again, we disagree.

¶ 37 Under the OML, "[i]n any action in which the court finds a violation of this section, the court shall award the citizen prevailing in such action costs and reasonable attorney fees." § 24–6–402(9).

¶ 38 Here, the district court found that "[p]laintiffs are not entitled to an award of attorney's fees as the ... Board cured any violation of the OML before the initiation of this lawsuit, and as a result, [p]laintiffs are not the prevailing party in this action."

¶ 39 We agree with the district court. As discussed above, a state or local public body may "cure" a prior violation of the OML by holding a subsequent complying meeting that is not a mere "rubber stamping" of an earlier decision. Here, as noted, the Board held a subsequent complying meeting and effectively "cured" the prior violations more than three weeks *before* plaintiffs filed their lawsuit, in which they alleged, as pertinent here, essentially undisputed violations of the OML,

which the Board admitted. Under these circumstances, we conclude that plaintiffs are not entitled to costs and attorney fees under the OML. *See Van Alstyne*, 985 P.2d at 100 (finding that plaintiffs were entitled to costs and attorney fees because they "*caused* a public body to comply with the Open Meetings Law") (emphasis added).

¶ 40 The judgment and order are affirmed.

Judge HAWTHORNE and Judge KAPELKE * concur.