2015 COA 100

**ARKANSAS VALLEY PUBLISHING COMPANY, d/b/a The Herald Democrat; and Marcia Martinek, Plaintiffs–Appellees,**

v.

**LAKE COUNTY BOARD OF COUNTY COMMISSIONERS, Defendant–Appellant.**

Court of Appeals No. 14CA0818

Colorado Court of Appeals, Div. V.

Announced July 16, 2015

Levine Sullivan Koch & Schulz, LLP, Steven D. Zansberg, Ashley I. Kissinger, Denver, Colorado, for Plaintiffs–Appellees

Hall & Evans, LLC, Thomas J. Lyons, Keith M. Goman, Denver, Colorado, for Defendant–Appellant

Opinion by JUDGE ASHBY

¶ 1 This is an appeal from the district court's order granting the application of the Arkansas Valley Publishing Company, d/b/a The Herald Democrat (the Herald), for an order to show cause, asking the court to order the Lake County Board of County Commissioners (the Board) to disclose the audio recording of its February 19 and 20, 2013, executive session. We reverse and remand the case to the district court for further proceedings.

### I. Background

¶ 2 On February 19, 2013, the Board convened an executive session to discuss a disciplinary matter involving the Director of the Lake County Building and Land Use Department (the Director). Lake County did not have a County Manager, and two members of the Board were serving as the direct supervisors to that Department. An employee in the Building and Land Use Department had accused the Director of criminal conduct. Before the meeting, the Director met with the County Sheriff and one of the supervising Board members and confessed to the conduct.

¶ 3 During the executive session, the Board sought legal advice from the County Attorney who advised it as to available options to respond to the misconduct. They met for one to two hours before recessing to attend to personal matters and to participate in the regularly scheduled monthly meeting. The Board did not mention the executive session at the monthly meeting, but reconvened the executive session the next morning for about one hour. The entire executive session was audio-recorded.

¶ 4 On March 18th, the Board published the minutes of the February 19th meeting prior to the Board's vote to go into executive session. That same day, the Herald requested the executive session recording. The Board denied the request.

¶ 5 Several months later, the Herald filed an application to show cause, asking the court to order disclosure of the recording. The Herald requested disclosure under both the Colorado Open Meetings Law (OML), sections 24–6–401 to –402, C.R.S.2014, and the Colorado Open Records Act (CORA), sections 24–72–200.1 to –206, C.R.S. 2014. After a hearing, the court granted the Herald's request based on its interpretation of the OML, but, at the Board's request, stayed the order pending this appeal.

## II. Open Meetings Law

¶ 6 The Board contends that the district court erred by granting the Herald's application and ordering the executive session recordings to be disclosed. Specifically, the Board contends that the district court erred by finding that the executive session, held February 19 and 20, was a meeting subject to the OML. We agree that the meeting was subject to the OML, but conclude that the exception in section 24–6–402(2)(f) for supervision of employees by county commissioners, C.R.S. 2014, applies.

¶ 7 We review the district court's interpretation of the OML de novo. *See Colo. Off-Highway Vehicle Coal. v. Colo. Bd. of Parks & Outdoor Recreation*, 2012 COA 146, ¶ 22, 292 P.3d 1132. In interpreting statutes, our primary task is to ascertain and discern the legislature's intent. *Id.* To do so, we first look to the language of the statute, giving words and phrases their plain and commonly understood meanings. *Id.*; *Gumina v. City of Sterling*, 119 P.3d 527, 530 (Colo.App. 2004). If the language is clear, we apply the statute as written. *Free Speech Def. Comm. v. Thomas*, 80 P.3d 935, 936 (Colo.App.2003). If the language is ambiguous, we may look to external sources to discern legislative intent. *Id.*

¶ 8 The legislative policy underlying the OML is "that the formation of public policy is public business and may not be conducted in secret." § 24–6–401. Therefore, as relevant here, the statute provides that "[a]ll meetings of a quorum or three or more members of any local public body, whichever is fewer, at which any public business is discussed or at which any formal action may be taken are declared to be public meetings open to the public at all times." § 24–6–402(2)(b); *see* § 24–6–402(1)(b) (A "meeting" is "any kind of gathering, convened to discuss public business, in person, by telephone, electronically, or by other means of communication.").

¶ 9 "Public business" is not defined in the statute, but the supreme court has held that, "a meeting must be part of the policy-making process to be subject to the requirements of the OML. A meeting is part of the policy-making process if it concerns a matter related to the policy-making function of the local public body holding or attending the meeting." *Bd. of Cnty. Comm'rs v. Costilla Cnty. Conservancy Dist.*, 88 P.3d 1188, 1194 (Colo.2004).

¶ 10 Further,

[a]ny meetings at which the adoption of any proposed policy, position, resolution, rule, regulation, or formal action occurs *or at which a majority or quorum of the body is in attendance*, or is expected to be in attendance, shall be held only after full and timely notice to the public.

§ 24–6–402(2)(c) (emphasis added). Full and timely notice requires posting the anticipated agenda of the meeting in a public place at least twenty-four hours before the meeting is to be held. *Id.*

¶ 11 However, meetings involving the "day-to-day oversight of property or supervi-

sion of employees by county commissioners" are exempt from the notice requirement. § 24–6–402(2)(f). And personnel discussions may take place in executive session, the record of which is generally not available for public inspection. §§ 24–6–402(2)(d.5)(II)(D), (4)(f)(I); *see Gumina,* 119 P.3d at 531.

¶ 12 Here, the Board convened a meeting without giving advance notice of it. The Board then voted to go into executive session to discuss personnel matters and closed the doors to the meeting room. The personnel matters it discussed were the available disciplinary options to address the Director's misconduct. During the executive session, which was held over the course of two days, the Board consulted with the county attorney and with the Director. By the end of the executive session, the Director had tendered his resignation.

¶ 13 The district court found that the "subject of the meeting did concern formal board action." However, the court also concluded, with record support, that the Board did not intend to take formal action against the Director in the executive session, but planned to "go into a public meeting and make a decision about the status of [the Director's] employment." It is important to distinguish obtaining legal advice and having discussions about available disciplinary options from taking formal action in response to the employee's conduct. We leave for another day the determination whether it is necessary to take such formal action in a public meeting or whether firing, as the ultimate form of disciplinary action, is a decision that may be made in executive session.

¶ 14 We conclude that this meeting falls within the notice exception of section 24–6–402(2)(f): supervision of employees by county commissioners. The allegations against the Director related to criminal conduct during work hours. Before convening the executive session, the Sheriff and at least one Board member had spoken with the Director, and he admitted to the alleged conduct. Although the county has a zero tolerance policy related to the misconduct, the subject of the executive session was to discuss the options available to the Board in implementing that zero tolerance policy under the circumstances presented. The Board was not adopting or amending a policy, but rather discussing the application of an existing policy to the situation presented by the Director's conduct.

¶ 15 The district court concluded that this was not the type of day-to-day supervision of employees described in the OML notice exception. We disagree. We conclude that employee disciplinary matters directed toward an individual employee are precisely the type of day-to-day supervision the statute meant to exempt. And, contrary to the Herald's contention, we do not find the phrase "day-to-day" to be ambiguous. It would lead to an absurd result to require all disciplinary or other supervisory matters for a specific employee that involve a quorum of board members to be discussed in public meetings. *See Costilla Cnty.,* 88 P.3d at 1192–93 ("If an interpretation of the statute would produce an absurd result, that interpretation is not favored."). It is the nature of the action that may be taken—e.g., employee supervision, including discipline or periodic performance evaluation of an employee—as opposed to the nature of the employee's conduct—e.g., tardiness, incompetence, or criminal misbehavior—that determines whether the meeting falls within the day-to-day supervision exemption. Discipline of an employee falls within the scope of routine, day-to-day supervision. Simply because the employee's conduct may not have been routine did not transform the Board's supervisory role into something extraordinary.

¶ 16 Further, requiring advance notice of this type of personnel meeting or discussion does not further the purpose of the OML. *See Cole v. State,* 673 P.2d 345, 349 (Colo. 1983) ("The intent of the Open Meetings Law is that citizens be given the opportunity to obtain information about and to participate in the legislative decision-making process which affects, both directly and indirectly, their personal interests."); *Colo. Off–Highway Vehicle Coal.,* ¶ 23 ("[W]e interpret the OML broadly to further the General Assembly's intent to give citizens a greater opportunity to meaningfully participate in the decision-making process by becoming fully informed on issues of public importance."); *see also*

*Gumina,* 119 P.3d at 530 ("In determining the meaning of a statute, we must adopt a construction that will serve the legislative purposes underlying the enactment."). Generally, disciplinary decisions and application of an existing personnel policy to an individual employee are not matters that require, or are necessarily appropriate for, public input. And the public's right to know what formal action may be taken following any personnel discussion was protected here by the Board's plan to take any formal action or make any change in policy at a meeting for which the public had notice and a right to attend. § 24–6–402(4).

¶ 17 Therefore, we conclude that the Board was not required to provide full and timely notice before convening the executive session to discuss the Director's employment status. *See Costilla Cnty.,* 88 P.3d at 1194.

¶ 18 We disagree with the district court that this interpretation of section 24–6–402(2)(f) cannot be harmonized with section 24–6–402(4)(f)(I), which permits personnel matters to be discussed in executive session unless an employee requests that the meeting be open to the public. Personnel matters may include a wide-ranging list of topics, including setting rates of compensation or the amount of leave employees may earn. Subsection (4)(f)(I) includes all personnel matters for any local public body, not just day-to-day supervision by county commissioners. And subsection (2)(f) relates only to the notice requirement, whereas subsection (4)(f)(I) relates to whether the records of personnel discussions must be made available to the public. *See* § 24–6–402(2)(d.5)(II)(D). For any personnel matter not falling within subsection (2)(f)'s limited scope, proper notice is still required before the local public body may convene an executive session. We perceive no conflict.

¶ 19 Therefore, here, because the Director did not request that the discussion occur in an open meeting, it was proper for the Board to discuss this personnel issue in executive session. And, while we do not know precisely what was discussed during the executive session, the court found, with record support, that the Board did not adopt a proposed policy, position, resolution, rule, regulation, or formal action during that meeting. It became unnecessary for the Board to take formal action when the Director tendered his resignation. Further, a member of the Board testified that, had the Director not resigned, it would have gone into open session to make a final decision whether to continue or terminate the Director's employment. *See Hanover Sch. Dist. No. 28 v. Barbour,* 171 P.3d 223, 228 (Colo.2007) ("While in executive session, the members may discuss policies, but they are limited in their policy making authority and may not adopt positions or make formal decisions.").

¶ 20 Therefore, we conclude that the Board permissibly discussed this employee-specific personnel issue in executive session and that the record of that meeting is not subject to disclosure under the OML. *See* § 24–72–204(5.5)(a), C.R.S.2014 ("Any person seeking access to the record of an executive session meeting of . . . a local public body . . . shall, upon application to the district . . . show grounds sufficient to support a reasonable belief that the . . . local public body engaged in substantial discussion of any matters not enumerated in section 24–6–402(3) or (4) or that the state public body or local public body adopted a proposed policy, position, resolution, rule, regulation, or formal action in the executive session in contravention of section 24–6–402(3)(a) or (4).").

¶ 21 Accordingly, we conclude that the district court erred by granting the Herald's request for the Board to disclose the records of the executive session. And, because of our resolution of this contention, we need not address the Board's remaining contentions regarding the emergency nature of the meeting or the Board's post-meeting attempts to cure the lack of notice. Whether this executive session was called without notice due to an emergency, which is a recognized exception to the twenty-four-hour notice requirement, and whether the actions the Board took after the meeting had concluded were sufficient to cure the fact that it was not properly convened are determinations that are not relevant in light of our holding that the executive session was properly convened. *See Gumina,* 119 P.3d at 531; *Lewis v. Town*

*of Nederland,* 934 P.2d 848, 851 (Colo.App. 1996).

¶ 22 Therefore, we reverse the district court's order requiring disclosure of the executive session record.

### III. Attorney Fees

¶ 23 The Herald has requested appellate attorney fees under sections 24–6–402(9) and 24–72–204(5), C.R.S. 2014. Those sections provide that if a violation of the OML has occurred, or if the party requesting access to OML records has been wrongfully denied access thereto, the prevailing party shall be awarded his or her reasonable attorney fees and costs. Conversely, if the OML was not violated or the local public body properly denied the requesting party access to the records, then the local public body is entitled to its reasonable attorney fees and costs only if the court finds that the action was frivolous, vexatious, or groundless.

¶ 24 Because we have concluded that the Board did not violate the OML or wrongfully deny the Herald access to the records of its February 19 and 20, 2013, executive session, we further conclude that the Herald is not entitled to attorney fees and costs. The Board is also not entitled to attorney fees and costs because neither the underlying action nor the appeal was frivolous, vexatious, or groundless.

### IV. Conclusion

¶ 25 We reverse the district court's order requiring the Board to disclose the record of its executive session, held February 19 and 20, 2013. The district court's order was based entirely on its interpretation of the OML and did not address the Herald's alternative argument that the record was subject to disclosure under CORA. Therefore, we remand the case to the district court to address, as appropriate, the Herald's alternative grounds for disclosure under CORA.

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

JUDGE ROMÁN and JUDGE KAPELKE * concur.