The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader. The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
April 25, 2019

## 2019COA59

**No. 18CA0033, *Bjornsen v. Board of County Commissioners* —
Administrative Law — Colorado Sunshine Act — Open Meetings
Law — Colorado Open Records Act — Work Product — Work
Product Exceptions**

A division of the court of appeals interprets several provisions

of the Colorado Open Meetings Law (COML) and Colorado Open

Records Act (CORA). The division concludes that only certain types

of work product are excluded from the CORA's definition of public

records and are therefore not open to public inspection. The

division also discusses, but does not resolve, whether there is an

emergency exception to the COML's rules governing how local

public bodies can convene executive sessions.

Court of Appeals No. 18CA0033
Boulder County District Court No. 17CV215
Honorable Thomas F. Mulvahill, Judge

Kristin Bjornsen,

Plaintiff-Appellant,

v.

Board of County Commissioners of Boulder County and Frank Alexander, in his official capacity as Executive Director of the Boulder County Housing Authority,

Defendants-Appellees.

JUDGMENT AFFIRMED IN PART, REVERSED IN PART,
AND CASE REMANDED WITH DIRECTIONS

Division VII
Opinion by JUDGE ASHBY
Dunn and Rothenberg*, JJ., concur

Announced April 25, 2019

Kristin Bjornsen, Pro Se

Benjamin H. Pearlman, County Attorney, David Hughes, Deputy County Attorney, Catherine ("Trina") Ruhland, Assistant County Attorney, Boulder, Colorado, for Defendants-Appellees

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2018.

¶ 1     Plaintiff, Kristin Bjornsen, filed claims alleging that defendants, the Board of County Commissioners of Boulder County (Board), and Frank Alexander, executive director of the Boulder County Housing Authority (BHCA), violated the Colorado Open Meetings Law (COML) and the Colorado Open Records Act (CORA). She alleged that the Board held executive sessions in violation of the COML and defendants improperly withheld documents she requested in violation of both the COML and the CORA.

¶ 2     The district court granted defendants summary judgment on the executive session claims and, after a hearing, ruled that defendants properly withheld the contested documents. Bjornsen appeals both the summary judgment and document disclosure rulings. We reverse the summary judgment, reverse two of the document disclosure rulings, affirm the court's other rulings, and remand with directions.

## I. Background

¶ 3     Bjornsen lived in Gunbarrel and was concerned about Boulder County authorizing an affordable housing development at the Twin Lakes Open Space. She requested public records related to the Board's consideration of this issue under the CORA. Pursuant to

1

her request, defendants provided her with hundreds of pages of documents. However, defendants determined that some of the information Bjornsen sought was not subject to public disclosure under the CORA. Defendants therefore withheld some documents and redacted parts of others.

¶ 4 Bjornsen sued defendants, alleging that they wrongfully withheld certain documents, or parts of documents, under the CORA and the COML. She also alleged that the Board convened numerous executive sessions in violation of the COML. The district court bifurcated the case and addressed the executive session and document disclosure claims separately. Defendants moved for summary judgment on the executive session claims, while the document disclosure claims were set for a hearing.

¶ 5 Before the hearing, the district court granted defendants' summary judgment on the executive session claims. However, the court provided no explanation or analysis to support its ruling. It neither identified the undisputed facts nor explained the legal basis for granting summary judgment.

¶ 6 At the hearing, various witnesses testified, including Bjornsen. In a written order, the district court ruled that Bjornsen was not

entitled to any of the documents she claimed defendants wrongfully withheld or redacted.

¶ 7 Bjornsen appeals, arguing that the district court erred by (1) bifurcating the executive session and document disclosure claims; (2) granting defendants summary judgment on the executive session claims; and (3) ruling that she was not entitled to any of the withheld or redacted documents.

## II. District Court Properly Bifurcated the Case

¶ 8 Bjornsen argues that the district court violated C.R.C.P. 42(b) by bifurcating the case without making any findings. We see no reversible error.

¶ 9 C.R.C.P. 42(b) provides that trial courts may conduct separate trials on issues or claims brought in the same action "in furtherance of convenience, or to avoid prejudice, or when separate trials will be conducive to expedition or economy." Trial courts have "broad discretion" to determine when bifurcation is appropriate under this rule. *Gaede v. Dist. Court*, 676 P.2d 1186, 1188 (Colo. 1984). A trial court errs only when it abuses that discretion. *See O'Neal v. Reliance Mortg. Corp.*, 721 P.2d 1230, 1232 (Colo. App.

1986).  Ordering separate proceedings on different claims is an abuse of discretion if it "virtually assures prejudice to a party."  *Id.*

¶ 10     In granting defendants' motion to bifurcate, the district court did not make any findings or explain its ruling.  We agree with Bjornsen that the district court should have explained why bifurcating the claims was proper under C.R.C.P. 42(b).  *See Sutterfield v. Dist. Court,* 165 Colo. 225, 231, 438 P.2d 236, 240 (1968) (Trial court's severance of claims was improper because court "made no finding that any of the conditions permitting separate trials of properly joined claims were present" under C.R.C.P. 42(b).).

¶ 11     However, we will not disturb a trial court's ruling unless it affected the substantial rights of the parties.  C.R.C.P. 61.  And Bjornsen's opening brief fails to sufficiently explain how the bifurcation affected her substantial rights.  She argues that the bifurcation "created a presumption – and possible predisposition – toward summary judgment [and] caused or contributed to: a delay in the case's resolution; failure of settlement discussions; and the exclusion of interrelated evidence at the . . . hearing."  She also argues that the bifurcation caused her pro bono attorney to

withdraw from representing her. But she does not explain how the bifurcation caused these things to happen, nor does she identify the evidence that she would have otherwise introduced at the hearing. Such conclusory arguments are insufficient to establish that her substantial rights were violated. *See Harner v. Chapman*, 2012 COA 218, ¶ 37 (lack of substantive argument that evidentiary "irregularities" prejudiced plaintiff precluded relief), *rev'd on other grounds*, 2014 CO 78.

### III. District Court Erred by Granting Summary Judgment

¶ 12 Bjornsen next argues that the district court erred by granting defendants summary judgment on her claims that the Board convened executive sessions in violation of the COML. We review the district court's ruling de novo, *see Campaign Integrity Watchdog v. Coloradans for a Better Future*, 2016 COA 56M, ¶ 12, and agree with Bjornsen.

¶ 13 Summary judgment is a drastic remedy that is appropriate only if the material facts are undisputed and establish that the moving party is entitled to judgment as a matter of law. C.R.C.P. 56(c); *Westin Operator, LLC v. Groh*, 2015 CO 25, ¶¶ 19, 21. The burden is on the moving party to establish that summary judgment

5

is appropriate. *See Meyer v. State Dep't of Revenue*, 143 P.3d 1181, 1184 (Colo. App. 2006). All doubts must be resolved against the moving party and the nonmoving party is entitled to the benefit of all favorable inferences that may be fairly drawn from the undisputed facts. *See Westin Operator, LLC*, ¶ 20.

¶ 14    When ruling on a summary judgment motion, a court may consider only sworn or certified evidence. *See* C.R.C.P. 56(e); *Cody Park Prop. Owners' Ass'n, Inc. v. Harder*, 251 P.3d 1, 4 (Colo. App. 2009).

¶ 15    The COML requires that if a quorum of a local public body, such as the Board here, meets to discuss public business or take any formal action, that meeting shall be open to the public. § 24-6-402(2)(b), C.R.S. 2018. However, a local public body can, for limited reasons and under certain circumstances, convene an executive session that is not open to the public. § 24-6-402(4). Executive sessions can be convened "only at a regular or special meeting" and only for a purpose enumerated in the COML. *Id.* These purposes include receiving legal advice from an attorney on specific legal questions and discussing the purchase, acquisition,

lease, transfer, or sale of any real, personal, or other property. § 24-6-402(4)(a), (b).

¶ 16     Entering into executive session requires the vote of two-thirds of the quorum of the local public body present. § 24-6-402(4). Before starting the executive session, the local public body must also announce the topic for discussion in the session with as much detail as possible without compromising the purpose of meeting in private. *Id.* Discussions that occur in executive session must be electronically recorded unless they are protected by attorney-client privilege. § 24-6-402(2)(d.5)(II)(A), (B). If an executive session is convened improperly, the record of the session is open to the public. *See Gumina v. City of Sterling*, 119 P.3d 527, 531 (Colo. App. 2004).

¶ 17     Bjornsen's complaint alleged that the Board violated the COML by repeatedly convening executive sessions without first announcing the topic to be discussed and failing to electronically record them. The complaint identified several specific dates and times at which these alleged violations occurred. Based on these alleged violations, Bjornsen asked for (1) a declaratory judgment that the Board had repeatedly violated the COML and (2) injunctive

relief ordering the Board to comply with certain practices going forward.

¶ 18    In their motion to the district court, defendants argued that they were entitled to summary judgment on alternative grounds. First, they argued that the Board's executive sessions always complied with the COML. Second, they argued that the declaratory and injunctive relief Bjornsen sought was not available as a matter of law.

¶ 19    We have no idea on what grounds the district court granted summary judgment because the court made no findings and provided no analysis. C.R.C.P. 52 does not require that courts make findings of fact and conclusions of law when ruling on summary judgment. But the comment to that rule states that "even where findings and conclusions are not required, the better practice is to explain in a decision on any contested, written motion the court's reasons for granting or denying the motion." C.R.C.P. 52 cmt. And where, as here, the motion articulated alternative bases on which the court could grant summary judgment and the opposing party was pro se, we strongly discourage granting summary judgment without factual findings or analysis.

8

¶ 20     Nevertheless, because we review summary judgment rulings de novo, the district court's failure to make findings or articulate its rationale does not abrogate our responsibility to review whether summary judgment was appropriate. And we conclude that summary judgment was not appropriate.

A. COML Violations

¶ 21     The undisputed facts did not establish that the executive sessions identified by Bjornsen complied with the COML. As mentioned above, a court can consider only sworn or certified facts when evaluating a motion for summary judgment. *See* C.R.C.P. 56(e); *Cody Park Prop. Owners' Ass'n, Inc.*, 251 P.3d at 4. We must disregard unsworn exhibits or documents attached to motions, as well as unsworn exhibits or documents attached to an unverified complaint.

¶ 22     Defendants submitted hundreds of pages of documents in support of their motion for summary judgment. But the vast majority of these were not sworn statements. The only sworn or certified evidence defendants submitted was a ten-page joint affidavit from three county employees.

¶ 23     Similarly, Bjornsen supported her response to defendants'
motion by referring to her complaint, the exhibits attached to it,
and a single email attached to her response to defendants' motion.
But none of the documents Bjornsen relied on were proper
summary judgment evidence because they were all unsworn and
uncertified.[1]

¶ 24     Consequently, we are left to determine whether the facts set
out in defendants' joint affidavit established that the Board's
executive sessions complied with the COML.  We conclude that they
do not.

¶ 25     The joint affidavit did not address the individual executive
sessions that Bjornsen alleged violated the COML.  Instead, the
affidavit described the Board's general practices during the period of
the contested executive sessions and stated that the Board always
followed those general practices.  It further stated that "upon
information and belief" those general practices were followed for

---

[1] After the court granted the defendants' summary judgment
motion, Bjornsen filed a motion to reconsider and attached an
affidavit to that motion.  But because we reverse the district court's
summary judgment order, we need not address her motion to
reconsider or any evidence attached to it.

each of the meetings that were alleged to be noncompliant with the COML.

¶ 26    Significantly, the affidavit stated that it was the Board's general practice to convene an executive session after announcing its topic at a regular or special meeting, citing to the provision of the COML that authorized the session, and voting to approve the session. But the affidavit also stated:

> In the rare and unavoidable event that an executive session is necessary prior to the ability of the [Board] to convene during a Public Meeting and the [Board] must hold an executive session without prior notice, the [Board] will then give full and proper notice of the executive session . . . at the next regular or special meeting.

¶ 27    We understand this to mean that one of the Board's general practices was to convene executive sessions outside of a regular or special meeting, without announcing the topic or otherwise noticing the session beforehand, if doing so was "unavoidable" and "necessary." We conclude that this practice violated the COML's requirements that executive sessions be convened only at regular or special meetings and only after the topic is announced in as much detail as possible. *See* § 24-6-402(4).

11

¶ 28     Citing to *Lewis v. Town of Nederland*, 934 P.2d 848 (Colo. App. 1996), defendants suggest that there is an emergency exception that is applicable to executive sessions.  But *Lewis* did not address executive sessions and defendants do not develop this argument or explain how the Board's practices would fall within such an exception if one even exists.[2]  We therefore do not address this

---

[2] We recognize that, in *Arkansas Valley Publishing Co. v. Lake County Board of County Commissioners*, 2015 COA 100, ¶ 21, another division of this court suggested, *in dictum,* that an executive session called without notice due to an emergency is "a recognized exception to the twenty-four-hour notice requirement" in section 24-6-402(2)(c), C.R.S. 2018 (requiring posting of the anticipated agenda of the meeting in a public place at least twenty-four hours before the meeting is to be held).  We are unaware of any such "emergency exception" in the COML.

The *Arkansas Valley* division cited *Gumina v. City of Sterling*, 119 P.3d 527, 531 (Colo. App. 2004), and *Lewis v. Town of Nederland*, 934 P.2d 848, 851 (Colo. App. 1996), for this proposition.  However, *Gumina* considered the issue of when a local public body may convene an executive session.  It did not address the so-called "emergency exception" proposed by the Board in this case.  The *Lewis* division construed a local ordinance that permitted the Nederland Board of Trustees to meet

> in the event of an emergency that requires the immediate action of the Board of Trustees in order to protect the public health, safety, and welfare of the residents of Nederland . . . provided however, any action taken at an emergency meeting shall be effective only until the first to occur of (a) the next regular

12

issue.  *See Taylor v. Taylor*, 2016 COA 100, ¶ 13 (declining to address conclusory contention unsupported by substantial argument).

¶ 29     Resolving all inferences against defendants, as we must on summary judgment, we conclude that the affidavit did not establish that the Board convened executive sessions in compliance with the strict requirements of the COML.  Based on this conclusion, defendants were not entitled to summary judgment on the ground that the undisputed material facts established that they complied at all times with the COML.

¶ 30     We are not persuaded otherwise by defendants' arguments that (1) they need not strictly comply with the COML's executive session provisions and (2) they cured any COML violation that did

---

meeting, or (b) the next special meeting of the Board at which the emergency issue is on the public notice of the meeting.

*Lewis*, 934 P.2d at 850.  The *Lewis* division observed that (1) the COML has no express language permitting the manner in which its requirements would apply in emergency situations and (2) local ordinances in conflict with state laws are void.  But the division noted "that plaintiff has not appealed the trial court's determination that an emergency existed," and simply found "no true conflict" between the COML and the Nederland ordinance.  *Id.* at 851. Neither *Gumina* nor *Lewis* recognized an emergency exception in the COML.

occur under *Colorado Off-Highway Vehicle Coalition v. Colorado Board of Parks and Outdoor Recreation*, 2012 COA 146. First, *Gumina* made clear that local public bodies must strictly comply with the COML's requirements for convening executive sessions. *Gumina*, 119 P.3d at 530 ("We conclude that because the [local public body] did not strictly comply with the requirements for convening an executive session, the two sessions were open meetings subject to the public disclosure requirements of [COML].").

¶ 31    Second, defendants' reliance on *Colorado Off-Highway Vehicle Coalition* is misplaced. In that case, another division of this court held that a public body could cure an improperly convened executive session by holding a subsequent meeting that was open to the public to consider the matters discussed in the executive session. *Id.* at ¶ 33. But the subsequent meeting must not be a mere rubber stamping of the decision made in the improperly convened executive session. *Id.*

¶ 32    Defendants' affidavit did not establish that they cured any improperly convened executive sessions by discussing the subject matter of those sessions at a later meeting that was open to the public. Instead, the affidavit stated that after convening a

14

non-COML-compliant executive session, the Board would merely retroactively notice it at the next public meeting. But under *Colorado Off-Highway Vehicle Coalition*, retroactive notice does not cure an improperly convened executive session. *Id.*

### B. Declaratory and Injunctive Relief

¶ 33     We also disagree with defendants' arguments that they were entitled to summary judgment because the relief Bjornsen requested was unavailable to her as a matter of law. Defendants argue that Bjornsen was not entitled to declaratory relief because such relief is not an available remedy for a COML violation. It is true that the COML does not mention declaratory relief. But C.R.C.P. 57 provides that declaratory relief is available in a wide variety of circumstances, including those here. Under the rule, "[a]ny person . . . whose rights, status or other legal relations are affected by a statute . . . may have determined any question of construction or validity arising under the . . . statute." C.R.C.P. 57(b). The rule also states that "[n]o action or proceedings shall be open to objection on the ground that a declaratory judgment or decree is prayed for." C.R.C.P. 57(a).

15

¶ 34    Bjornsen's action here is certainly one to determine her statutory legal rights under the COML. And defendants cannot object to her action on the ground that she seeks declaratory relief. *Id.* She was therefore free to pursue declaratory relief for the alleged COML violations.

¶ 35    Defendants' arguments that Bjornsen was not entitled to injunctive relief also fail. The COML specifically authorizes courts to "issue injunctions to enforce the purposes of [COML] upon application by any citizen of this state." § 24-6-402(9)(b). Defendants argue that Bjornsen was not entitled to injunctive relief because the undisputed facts established that they complied with the COML. But, as we discussed above, they did not.[3]

¶ 36    We therefore conclude that defendants were not entitled to summary judgment on the grounds asserted in their summary judgment motion and the district court erred by ruling otherwise.

---

[3] We need not decide whether Bjornsen may have been entitled to all of the specific injunctive relief that she requested in her complaint. But we conclude on the basis of the discussion above that she may have been entitled to some of it. And that is enough to establish that granting defendants' summary judgment motion because Bjornsen was not entitled to *any* injunctive relief was improper.

## IV. Document Disclosure Claims

¶ 37    Bjornsen also challenges several of the district court's rulings that the Board properly withheld or redacted various documents. We address each of these arguments separately and conclude that two of them warrant relief.

### A. "Your Opinion Matters" Draft Emails

¶ 38    Bjornsen argues that the district court erred by ruling that defendants properly withheld drafts of an email that was eventually sent to the public by Frank Alexander, the unelected executive director of the BHCA. The district court ruled that these drafts were work product and therefore not a public record subject to disclosure under the CORA.

¶ 39    We review the district court's factual findings for clear error, *see E-470 Pub. Highway Auth. v. 455 Co.*, 3 P.3d 18, 22 (Colo. 2000), but review the construction and application of the CORA de novo, *see Harris v. Denver Post Corp.*, 123 P.3d 1166, 1170 (Colo. 2005). We conclude that the district court erred by ruling that the draft emails here were not public records.

¶ 40    The CORA provides that public records shall be open to public inspection. § 24-72-203(1)(a), C.R.S. 2018. "Public records" means

"all writings made, maintained, or kept by [a] political subdivision of the state . . . for use in the exercise of functions required or authorized by law or administrative rule or involving the receipt or expenditure of public funds." § 24-72-202(6)(a)(I), C.R.S. 2018.

¶ 41 Not included in the CORA's definition of public records are certain kinds of work product. The CORA defines work product in section 24-72-202(6.5)(a):

> "Work product" means and includes all intra- or inter-agency advisory or deliberative materials assembled for the benefit of elected officials, which materials express an opinion or are deliberative in nature and are communicated for the purpose of assisting such elected officials in reaching a decision within the scope of their authority.

¶ 42 The two kinds of work product that are excluded from the definition of public records and are therefore not open to public inspection are (1) work product in "the correspondence of elected officials," § 24-72-202(6)(a)(II)(A); and (2) work product "prepared for elected officials," § 24-72-202(6)(b)(II).

¶ 43 The draft emails at issue here were prepared by BHCA staff at the direction of Alexander. He asked his staff to draft an email that he would eventually send out to the public encouraging citizens to

participate in upcoming meetings about the proposed Twin Lakes

affordable housing development.  At the hearing, when asked who

directed him to send out the email, the following exchange

occurred.

> [Alexander]: Well, it's my decision as the department head to send out the email.  But on behalf of the board of county commissioners, this particular project has been a very high visibility project.  The most visible of all affordable housing projects I've been involved with in my 25-plus year career.
>
> And because of the nature of the sensitivity and the involvement of the public, the board of county commissioners really wanted to hear from all sides on this issue and ensure that the planning commission did as well, and ensure that the applicant, which was the housing authority, had a fair hearing as well as all members of the public.
>
> . . . .
>
> [Defendants' Counsel]: So was the email drafted for the benefit of the elected officials?
>
> [Alexander]: Yes.

¶ 44    Based on this testimony, the drafts qualified as work product

because they were "assembled for the benefit of elected officials."

§ 24-72-202(6.5)(a).  The goal of sending an email to the public was

to help the county commissioners resolve a contentious issue. And the drafts were the first step in this process.

¶ 45    But as discussed above, only two categories of work product are excluded from the CORA definition of public records: (1) work product in the correspondence of elected officials, § 24-72-202(6)(a)(II)(A); and (2) work product "prepared for elected officials," § 24-72-202(6)(b)(II).

¶ 46    The drafts were not part of the correspondence of elected officials; there was no evidence that the elected county commissioners ever sent or received them. And although Alexander testified that the drafts were prepared "for the benefit of [the county commissioners]," he did not testify that they were prepared for the county commissioners. Instead, he testified that he asked his staff to prepare the drafts for *him* because he thought they might be helpful for the commissioners. The commissioners did not ask for the drafts and the drafts were not sent to the county commissioners. Ultimately, Alexander sent an email to the public which was based on the drafts that his staff had prepared for him at his direction. Under these circumstances, we conclude that the drafts were prepared for Alexander, an unelected appointee. Thus,

20

although the drafts were work product under section 24-72-202(6.5)(a), they were not prepared for an elected official under section 24-72-202(6)(b)(II). The drafts therefore constituted public records that Bjornsen was entitled to inspect.

## B. Redacted Commissioner Emails

¶ 47    Bjornsen next challenges the district court's ruling that defendants properly redacted five emails she requested under the CORA and the COML. She argues that the district court made factual findings that were clearly erroneous. We agree that the district court made clearly erroneous factual findings. But we conclude that these errors affected only the court's ruling that the redactions were proper under the COML. We therefore reverse that ruling and affirm the court's ruling that the redactions were proper under the CORA.

¶ 48    In ruling that the redactions were proper under both statutes, the district court found that all five emails in question were among staff, not the elected county commissioners. As the district court wrote in its order:

> The County called Deputy County
> Commissioner Michelle Krezek who testified
> that the redacted correspondence occurred

21

only between Boulder County staff members, that there were no emails between Boulder County Commissioners, and that the emails were sent prior to any decision-making by the Commissioners (elected officials). The Court's *in camera* review of the emails confirms Ms. Krezek's testimony

. . . .

Even a cursory review of the emails shows that there was no discussion among or between elected officials.

¶ 49 This was clear error. The emails containing the redactions were not communications between only staff. Four of the five emails were sent from a commissioner to at least one other commissioner. And the fifth was sent from a commissioner to a recipient who appeared to be county staff.

¶ 50 However, we conclude that this error does not require us to reverse the district court's ruling that the redactions were proper under the CORA. As explained above, the CORA provides that local public bodies may withhold work product from public disclosure if it is either part of the correspondence of elected officials or prepared for elected officials. § 24-72-202(6)(b)(II). The district court held that the redactions were work product that was prepared for elected officials, conclusions that Bjornsen does not challenge on appeal.

22

("The emails reflect materials, including advisory and deliberative materials from employees, gathered for elected officials in advance of their decision regarding the Twin Lakes Proposal. Moreover, many of the redacted portions of these emails also likely fall under the definition of notes and memoranda relating to and serving as background information for the elected officials."). The senders' and recipients' identities were irrelevant to this holding. Therefore, the district court's clearly erroneous identification of the senders and recipients did not affect the propriety of the court's ruling that the redactions were proper under the CORA. If anything, had the district court properly identified the senders and recipients of the emails in question as including elected commissioners, the court would have had an alternative ground on which to uphold the redactions (as work product in the correspondence of elected officials).

¶ 51 In contrast, the district court's clearly erroneous factual findings do require us to reverse its ruling that the redactions were proper under the COML. The COML requires that all meetings of a quorum of a local public body to discuss public business or take formal action be open to the public. § 24-6-402(2)(b). This applies

23

to elected officials' use of "electronic mail to discuss pending legislation or other public business among themselves." § 24-6-402(2)(d)(III).

¶ 52     The district court held that the redacted material did not constitute public meetings under the COML because "[e]ven a cursory review of the emails shows that there was no discussion among or between elected officials." The district court was wrong, as discussed above. And because the court relied on this clearly erroneous factual finding in ruling that the redacted material did not constitute a public meeting, we must reverse this ruling. On remand, the district court should make new factual findings supported by the record and determine whether, in light of those findings, the redactions were proper under the COML.

## C. Gunbarrel Zoning Notes

¶ 53     Bjornsen also argues that the district court erred by ruling that she was not entitled to a privilege log for the "Gunbarrel Zoning Notes" document that defendants withheld under attorney-client privilege. We disagree.

¶ 54     Privileged information, including information falling under the attorney-client privilege, is not subject to public inspection under

24

the CORA. § 24-72-204(3)(a)(IV), C.R.S. 2018. The attorney-client privilege extends only to matters (1) communicated by or to the client in the course of gaining counsel, advice, or direction about the client's rights or obligations; and (2) under circumstances giving rise to a reasonable expectation that the statements will be treated as confidential. *Black v. Sw. Water Conservations Dist.*, 74 P.3d 462, 467 (Colo. App. 2003). The party claiming the privilege has the burden of establishing that it applies. *Id.*

¶ 55    At the hearing, the deputy county attorney testified that he authored the Gunbarrel Zoning Notes document to provide his clients, the county commissioners, with legal advice. He further testified that he shared the document only with his clients and that he did so with the reasonable expectation that it would remain confidential. Bjornsen presented no evidence to the contrary, and the district court relied on this testimony in ruling that the document was protected from disclosure by attorney-client privilege.

¶ 56    Bjornsen argues that the deputy county attorney's testimony was insufficient to establish that the privilege applied. She suggests, without evidence, that the document was shared with

25

people other than the deputy county attorney's clients, which meant that there was no reasonable expectation that the document would remain confidential. She claims that the only way to establish that the document was not shared beyond the deputy county attorney and his clients was to provide her with the document's privilege log, which would have presumably showed whether parties other than the clients accessed the document.

¶ 57 Bjornsen provides no authority, and we are aware of none, for the proposition that disclosing a privilege log is the only way to establish that a document was not shared beyond an attorney and the attorney's clients. Absent such authority, we conclude that the deputy county attorney's testimony, given under oath, that only his clients viewed the document was sufficient.

### D. Alleged Nondisclosure of Witness Testimony

¶ 58 Finally, Bjornsen contends that the district court erred by denying her motion, filed seven days after the hearing, arguing that defendants failed to disclose that two witnesses would testify about specific topics. Like defendants, we question whether Bjornsen's failure to raise this issue until a week after the hearing waived her ability to challenge any lack of disclosure. But we need not resolve

26

that question. Even if Bjornsen did not waive this issue, she has failed to explain how the lack of disclosure prejudiced her. She states only that the lack of disclosure surprised her, leaving her with no opportunity to prepare questions or defend herself. Because she does not explain how the lack of disclosure "materially prejudiced [her] case," we perceive no error. *Mullins v. Med. Lien Mgmt., Inc.*, 2013 COA 134, ¶ 43 (no error in allowing undisclosed witness to testify because aggrieved party did not argue that nondisclosure materially prejudiced his case).

## V. Conclusion

¶ 59 The summary judgment in favor of defendants on Bjornsen's executive session claims is reversed. The district court's order denying Bjornsen access to the "Your Opinion Matters" draft emails is also reversed, along with its ruling upholding the redactions to the commissioner emails under the COML. The remainder of the district court's order is affirmed.

¶ 60 The case is remanded to the district court with directions to conduct further proceedings on Bjornsen's executive session claims consistent with this opinion. We also direct the district court to reconsider whether the redactions to the commissioner emails were

27

proper under the COML. The court may conduct whatever further proceedings it deems necessary to make new factual findings supported by the record and determine whether, in light of those findings, the redactions were proper under the COML.

JUDGE DUNN and JUDGE ROTHENBERG concur.